222 N.J. Super. 153 (1987)
536 A.2d 299
MAYO S. SISLER, ET AL., PLAINTIFFS-APPELLANTS,
v.
GANNETT COMPANY, INC., COURIER NEWS CO. AND SAM MEDDIS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1987.
Decided December 31, 1987.
*155 Before Judges PETRELLA, DREIER and BAIME.
Richard H. Thiele, argued the cause for appellants (Thiele & Hermes, attorneys; Richard H. Thiele, on the brief).
Robert C. Bernius, admitted pro hac vice, argued the cause for respondents (Strauss & Hall, attorneys; Richard A. Ragsdale, of counsel; Abigail T. Reardon, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff appeals from a summary judgment granted in the Law Division after a remand by the Supreme Court. This case *156 has had a protracted history in the courts. In 1983 at the conclusion of a lengthy defamation action, the jury found defendants negligent, awarding $200,000 in general damages and $850,000 in special damages. Plaintiff's claim for punitive damages was dismissed on motion. On appeal, we affirmed the judge's trial rulings, including the determination that plaintiff was a "private figure" requiring a showing of negligence and not actual malice. Sisler v. Courier-News Co., 199 N.J. Super. 307 (App.Div. 1985), rev'd sub nom. Sisler v. Gannett Co., Inc., 104 N.J. 256 (1986). After establishing a new standard for review of private figure media defamation claims, the Supreme Court set aside the jury verdict and reversed the judgment below. The matter was remanded for retrial.
On remand, defendants moved for summary judgment. The trial judge to which the matter was then assigned granted the motion and dismissed the case. At the time the summary judgment motion was granted, plaintiff's motion in limine seeking evidentiary rulings was pending before the trial court.
We need only briefly restate the facts which are recounted in detail in earlier opinions of both the Supreme Court and the Appellate Division. Plaintiff Mayo Sisler co-founded the Franklin State Bank in the early 1960's, and until he retired in 1980, plaintiff served as the bank's President or Chairman of the Board. When plaintiff retired in 1980, he began to pursue other projects, including the management of his wholly-owned racehorse breeding corporation and farm, named Apt-to-Acres.
In May 1980 plaintiff secured a $2,250,000 loan from Franklin State Bank with his Monmouth County horse farm and livestock which was worth approximately $5,250,000. The bank requested side collateral, and plaintiff pledged a Somerset County real estate holding that was appraised at approximately $700,000 (although it was assessed at $400,000).
In August 1981 defendant Sam Meddis wrote and his employer, defendant Courier-News, published a series of three articles about allegedly improper loans that were made by the Franklin *157 State Bank. In the second article, although the body of the article was accurate, the headline and lead paragraph implied that plaintiff was involved in a federal FBI probe of several million dollars in questionable auto loans. In the third article, published the day after the second article, defendants accused the former president of the bank of posting collateral worth only $400,000 to subsidize a $2,000,000 mortgage loan which was obtained from the Franklin State Bank.
The defendant reporter allegedly misunderstood the concept of side collateral, misled his employer concerning a legal consultation, misrepresented the bank's reliance on appraised rather than assessed values, and never checked the public documents on Apt-to-Acres at the Monmouth County Clerk's office. These documents would have illustrated to the reporter that the farm was the principal collateral for the loan. The Courier-News printed retractions of these two articles.
Plaintiff suffered tremendous financial losses when a leading horse syndicator anonymously received these articles. The syndicator terminated negotiations with plaintiff for the standing at stud of three world-class standardbred horses, because "[t]he articles do raise doubt as to the financial stability of you and the farm as well as the most important item  `integrity'!"
At the initial trial, the judge found that because plaintiff was not a public figure, plaintiff had the burden of proving that defendants negligently published the defamatory articles. The judge also denied plaintiff's motion to submit the issue of punitive damages to the jury which would have necessitated a finding of actual malice. The judge commented:
And with respect to the so-called constitutional standard of actual malice, it is our opinion that the evidence would not permit the minds of reasonable persons to differ as to the fact that the articles were not published with a knowing calculated falsehood.
Rather, the evidence indicates that the defendant reporter, as well as the editors of the newspaper, mistakenly believed certain facts and arrived at certain erroneous conclusions as to those facts and their publication in the newspaper reflected those beliefs and conclusions ...

*158 The misconceptions of the defendant reporter and the editors of the paper are not sufficient to sustain a conclusion that the articles were published with knowledge of the falsity of the information or in reckless disregard of whether they were true or false.
The jury returned a verdict for the plaintiff and awarded $1,050,000 in compensatory damages. Defendants appealed, raising among other issues the trial court's use of the negligence standard. Plaintiff cross-appealed, contesting the judge's punitive damages ruling and requesting that the court increase the compensatory damage claim. We affirmed Judge Gaynor's decision in all respects and specifically stated that "[a]s to punitive damages, there was no testimony in this case in which a reasonable jury could have found the requisite malice or intent to harm." 199 N.J. Super. at 329.
The Supreme Court reversed the judgment and remanded the case for retrial in accordance with its opinion. The Court adopted a new common-law standard, holding that
when a private person with sufficient experience, understanding and knowledge enters into a personal transaction or conducts his personal affairs in a manner that one in his position would reasonably expect implicates a legitimate public interest with an attendant risk of publicity, defamatory speech that focuses upon that public interest will not be actionable unless it has been published with actual malice. [104 N.J. at 279].
The Court explicitly held that plaintiff must prove that defendants acted with "actual malice" by publishing the defamatory articles.
The Court did not address any of plaintiff's cross-claims, noting that because a new standard of proof had been enunciated, the issues raised by plaintiffs may appear differently at the retrial. Id. at 284-285. Plaintiff filed a motion for reconsideration of the issues raised by his petition for certification; however, the Court denied the petition and stated that it expressed "no view in respect of the merits of the issues that are the subject of the within motion."
On remand, defendants moved for summary judgment on two grounds. First, defendants contended that plaintiff cannot prove "actual malice" as a matter of law. Second, since the *159 Appellate Division affirmed the initial dismissal of plaintiff's claim for punitive damages because plaintiff had failed to establish actual malice, defendants claimed that the case should be dismissed under the "law of the case" doctrine. The trial judge granted defendant's motion expressly under the law of the case doctrine.
The question presented here is whether the law of the case doctrine precludes the trial court from reconsidering the issue of actual malice regarding liability when the Appellate Division, on a previous appeal, ruled on the issue of actual malice regarding the recovery of punitive damages. In addition, we will briefly touch on the merits basis of defendant's motion in the Law Division, of necessity implicated in plaintiff's second argument.
The law of the case doctrine requires judges to respect unreversed decisions made during the trial by the same court or a higher court regarding questions of law. State v. Reldan, 100 N.J. 187, 203 (1985). The doctrine is grounded in the policy that once an issue is litigated and decided in a suit, relitigation of that issue should be avoided if possible. State v. Hale, 127 N.J. Super. 407, 410 (App.Div. 1974). Prior decisions on legal issues should be followed unless there is substantially different evidence at a subsequent trial, new controlling authority, or the prior decision was clearly erroneous. See, e.g. State v. Reldan, supra, 100 N.J. at 204 (quoting State v. Hoffler, 174 Conn. 452, 389 A.2d 1257 (1978)); Anderson v. Sills, 143 N.J. Super. 432, 441 (Ch.Div. 1976); State v. Roccasecca, 130 N.J. Super. 585, 591 (Law Div. 1974). The doctrine is discretionary, and the court is never irrevocably bound by its prior interlocutory ruling in the same case. State v. Reldan, supra, 100 N.J. at 205. The doctrine usually applies in instances where a judge must decide whether a ruling made during one trial stage of the action is binding throughout the remainder of the trial. Procanik v. Cillo, 206 N.J. Super. 270, 293 (Law Div. 1985). Compare R. 4:42-2, which states in part:

*160 In the absence of [a direction that an issue is separate and is certified as a final judgment] any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims.
The Supreme Court has stated that the law of the case doctrine "should be applied flexibly to serve the interests of justice." State v. Reldan, supra, 100 N.J. at 205. Thus, if the interests of justice will be served, a prior ruling may be relitigated before final judgment. Ibid.
Where the rule is applied to a prior appellate decision in the same case, the doctrine is more stringent. See State v. Hale, supra, 127 N.J. Super. at 410; State v. Cusick, 116 N.J. Super. 482, 485 (App.Div. 1971); Ehnes v. King, 50 N.J. Super. 109, 113 (App.Div. 1958). An established exception to the law of the case doctrine is the same as that applicable to collateral estoppel, namely, the doctrine may be relaxed where there has been an intervening and retroactive change in the law. Morris Cty. Fair Hous. Council v. Boonton Tp., 209 N.J. Super. 393, 444 n. 16 (Law Div. 1985), aff'd in part and rev'd on other grounds in part 103 N.J. 1 (1986) (citing State Farm Mutual Ins. Co. v. Duel, 324 U.S. 154, 162, 65 S.Ct. 573, 577, 89 L.Ed. 812, 819 (1945)). This principle also applies to appellate remands, although in some cases the interests of justice might dictate the application of the same law throughout a proceeding. But especially when the law has been changed in an appellate phase of the same case and might affect a non-final mixed factual and legal adjudication, the matter may be reconsidered. Cf. State v. Reldan, supra, 100 N.J. at 203-205. Also, there is in any event the further principle that the law of the case doctrine will not apply to an ambiguous or uncertain decision. 5 Am.Jur.2d, Appeal and Error, § 752 at 196.

I.
Plaintiff makes three arguments in support of his contention that the trial judge erroneously applied the doctrine of law of the case. Plaintiff's first argument is that the application of *161 the law of the case doctrine under these circumstances would be inappropriate because of the Supreme Court's change in the standard of proof. Defendants, however, argue that any change in the law has not affected plaintiff's case, because plaintiff already had a full and fair opportunity to try to prove actual malice in his claim for punitive damages. Defendants contend that the Supreme Court merely "expanded the applicability of the existing law of `actual malice' to compensatory damages." Defendants' conclusion is not clearly reflected by the Supreme Court in its reversal and the companion case also dealing with the issue of actual malice, Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125 (1986).
Before the Supreme Court's opinion in Sisler, plaintiffs could only recover punitive damages in defamation actions if they could prove "malice in fact." N.J.S.A. 2A:43-2; but see Burke v. Deiner, 97 N.J. 465, 477 n. 2 (1984). Malice in fact, or common law malice, "has meant variously that the statement was published with an improper purpose or ill will, or without belief or reasonable grounds to believe in its truth." Dairy Stores, supra, 104 N.J. at 136; see also Bainhauer v. Manoukian, 215 N.J. Super. 9, 41 (App.Div. 1987). In Dairy Stores, the Supreme Court recognized that each "malice" standard is imbued with a different meaning. 104 N.J. at 149. Thus, the Supreme Court in the area of the "fair comment" privilege discarded the label "malice" because the term is fraught with countless definitions. Id. at 151. The Court explained:
As the actual malice standard has evolved, the relevant test is not `whether a reasonably prudent man would have published, or would have investigated before publishing,' but `whether the defendant in fact entertained serious doubts as to the truth of his publication.' St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968). That test, which is substantially subjective, is akin to the common-law requirement that to qualify as fair comment, a statement must honestly express the writer's true opinion....
* * * * * * * *
The bald assertion by the publisher that he believes in the truth of the statement may not be sufficient. St. Amant v. Thompson, supra, 390 U.S. at 732, 88 S.Ct. at 1326, 20 L.Ed.2d at 267. Notwithstanding a publisher's denial *162 that it had serious doubts about the truthfulness of the statement, other facts might support an inference that the publisher harbored such doubts.
* * * * * * * *
`Malice' adds nothing to the legal analysis of an allegedly defamatory statement, and it can become a pitfall in the underbrush of the common law. Consequently, we lose nothing by striking `malice' from the vocabulary of the common law of defamation.... Although we discard the label, we adhere to the principle that to overcome a qualified or conditional privilege, a plaintiff must establish that the publisher knew the statement to be false or acted in reckless disregard of its truth or falsity. [Id. at 149-151].
Although the terminology may have changed, the malice standard remained largely the same, although perhaps expanded by the court's emphasis on the quoted subjective bad faith language from the libel defamation case of St. Amant v. Thompson, supra. In Sisler, the Supreme Court adopted the Dairy Stores definition of "actual malice:"
We conclude that in such a case the interests of free speech justify, and fairness to individual reputation permits, application of a strict and high burden of proof to establish actionable defamation. This is encompassed by a standard akin to the `actual malice' standard of New York Times v. Sullivan [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)]. As most recently explained in the variant context of `fair comment,' `a plaintiff must establish that the publisher knew the statement to be false or acted in reckless disregard of its truth or falsity.' Dairy Stores, Inc. v. Sentinel Publishing Co., supra, 104 N.J. 131 [sic., 151]. [104 N.J. at 275-276].
As support for the "reckless disregard" standard, the Court in Dairy Stores cited Restatement, Torts 2d, § 600, which underscores both the language quoted by the Supreme Court from St. Amant v. Thompson, supra, and the identity of the standards to be applied in the fair comment defense and public figure libel case.
Reckless disregard as to truth or falsity exists when there is a high degree of awareness of probable falsity or serious doubt as to the truth of the statement. The standard here is the same whether liability will be imposed for a defamatory communication about a public official or a public figure. (See § 580A, especially Comment d) [Restatement, Torts 2d, (1977), § 600, comment b. at 289].
Comment d to Restatement, Torts 2d, § 580A, cited in the § 600 comment explains the parallel language of § 580A governing public figure defamation. The pertinent paragraph reads:

*163 Reckless disregard is held not to be measured by whether a reasonable, prudent person would have published the statement without more investigation. Reckless disregard is said to exist, however, when there is `a high degree of awareness of ... probable falseness' of the statement, or there are `serious doubts as to [its] truth.' Availability of sufficient time and opportunity to investigate the truth of the statement is a significant factor in determining whether the publisher was negligent (see § 580B, Comment h), and it may have some relevance in determining whether the publisher acted with reckless disregard as to the truth or falsity. [Restatement, Torts 2d, (1966) § 580A, Comment d at 218].
A related question raised is what we intended by our earlier decision when we stated:
As to punitive damages, there was no testimony in this case in which a reasonable jury could have found the requisite malice or intent to harm. [199 N.J. Super. at 329].
On the summary judgment motion here appealed from plaintiff argued to the trial judge that we ruled on "constitutional malice." The judge held that we meant actual malice by the term "requisite malice" and common law malice by the words "or intent to harm." Arguably, the Supreme Court may have thought that we meant something different than that which the trial judge assumed, since the Court remanded the matter instead of deciding it on the basis of the law of the case doctrine. It also has been suggested that we may have been referring to the libel damages statute, N.J.S.A. 2A:43-2, which states that unless plaintiff shows "malice in fact" or a failure to print a retraction, defendant is only liable for actual damages.
We acknowledge the ambiguity of our prior phrasing. We intended to recognize that the judge had reasonably evaluated the evidence then before him in passing upon the issue of malice in an evidential context where plaintiff had a clear right to pursue his compensatory damage claim under what we assumed to be a viable negligence standard. There had also been a question of whether there had been a timely claim of subjective bad faith, now clearly within the "malice" definition *164 of Dairy Stores. In these circumstances we hold that the trial judge was not bound by the law of the case.[1]

II.
Plaintiff's second argument is that the law of the case doctrine cannot be applied until the judge rules on the admissibility of critical evidence which was excluded at the first trial. Although this argument implicates defendant's remaining summary judgment motion, not yet passed upon by the trial judge, in light of our remand we will briefly discuss it.
If plaintiff provides sufficient new or differently assembled evidence on retrial after the remand, so that a jury could find for the plaintiff under the Supreme Court's new standards, the doctrine of law of the case would be inapplicable. See Safir v. Dole, 718 F.2d 475, 480-481 (D.C. Cir.1983), cert. den. 467 U.S. 1206, 104 S.Ct. 2389, 81 L.Ed.2d 347, reh'g den. 467 U.S. 1268, 104 S.Ct. 3563, 82 L.Ed.2d 864 (1984); Reimer v. Musel, 251 Iowa 863, 264 N.W. 47 (1935); cf. 5B C.J.S., Appeal & Error, § 1964 at pp. 567-569. Defendant, however, argues that "plaintiff offers no newly-discovered evidence now, only evidence which he offered at trial, or for tactical reasons, declined to present to the jury." But this would be a new trial under a new standard, and plaintiff should have the opportunity to make different tactical decisions. Furthermore, the new trial judge should have the right to make his own evidentiary rulings. See State v. Hale, supra, 127 N.J. Super. at 413 (where the court held that a new Miranda hearing was appropriate even though during the original Miranda hearing the confession was excluded). This is especially so in light of the Supreme Court's language directing the remand for retrial.
*165 Plaintiff contends that facts not presented at all or not asserted at the first trial to meet the now-required malice standard could prove "actual malice." "Actual malice" was defined in Dairy Stores, supra, 104 N.J. at 149-151, as defendant's knowledge that the statement was false, or defendant's "reckless disregard of [the statement's] truth or falsity" or the entertainment of "serious doubts as to the truth of [the] publication."[2]Dairy Stores, at 149-151, quoted supra; see also Restatement, Torts 2d (1977) § 580A, Comment d at 218, and § 600, Comment b at 289.
Most of these facts were before the first jury (but principally assembled for a negligence trial), except the crucial facts about *166 the "anonymous lawyer" which were excluded by the first trial judge. The present judge is not bound by that decision. Since he granted defendant's motion for summary judgment without addressing plaintiff's pending motion in limine seeking evidentiary rulings on whether defendants waived their privilege to refuse to disclose the identity of the "anonymous lawyer" and whether local counsel for defendants and plaintiff's attorney's new law partner are competent witnesses to the alleged "anonymous lawyer" meeting, the matter is still to be resolved.[3]

III.
Plaintiff's final argument is that the application of the law of the case doctrine is nonsensical because the Supreme Court remanded the case for trial instead of itself applying the law of the case doctrine. The Court specifically anticipated that the issues would be presented in a different evidentiary light. Defendants contend that, to the contrary, the Supreme Court contemplated a summary disposition of the case on remand. The Supreme Court's unabridged directive, the meaning of which is contested by the parties, states that:
Although plaintiff received a favorable verdict at trial, he cross-appealed here and below claiming that several trial errors reduced the amount of the jury award. However, because we today remand the matter for determination under a different burden of proof, the issues raised by plaintiff may not recur or may be cast in a different evidentiary light at retrial. Resolution of plaintiff's claims is thus obviated.

VI.
It is our conclusion that the plaintiff must establish defamation against defendants by establishing actual malice in the publication of the offending articles. For that reason, the jury verdict awarding damages must be set aside *167 and the judgment below reversed. The matter is remanded for retrial in accordance with this opinion. [104 N.J. at 284-285; emphasis supplied].
Although plaintiff had cross-appealed the punitive damages issue, the Court did not mention either the initial trial decision to deny an award of punitive damages or our affirmance. "[O]nly when an issue not expressly addressed must have been decided by `necessary implication' will the doctrine [of law of the case] be applied." Bouchet v. National Urban League, Inc., 730 F.2d 799, 806 (D.C. Cir.1984). Arguably, however, the Supreme Court did address the issue of actual malice by necessary implication by stating that "[r]esolution of plaintiff's claims is thus obviated." The only logical construction of the Court's use of the word "obviated" in light of its decision to remand the case for further proceedings, would be that the necessity for the Supreme Court to resolve the issue was obviated because the case had already been remanded for retrial by the Law Division.
Defendants urge that the Court may also have addressed by implication the issue of the necessity to try the actual malice question by its acknowledgement that the trial court could grant summary judgment after a full record is developed under the new evidential standards. The Court stated the following in a footnote:
In anticipating the possibility of a retrial and addressing issues that would be relevant in that event, we also should advert to the availability of summary judgment proceedings in light of the discussion in Dairy Stores, Inc. v. Sentinel Publishing Co., supra, 104 N.J. at 133 [sic; 157]. This reference is timely in light of the legal principles that will govern a retrial of the matter, but we do not express any views as to the appropriateness of summary judgment, which shall of course depend on the state of the record. [104 N.J. at 279 n. 4].
In Dairy Stores, the Court described the federal standard to resolve a motion for summary judgment in defamation actions. 104 N.J. at 155-156. The Court then articulated the New Jersey standard which is "whether the opposing affidavits have created a genuine issue of material fact that defendants published *168 with actual malice." Id. at 156. The Court then continued:
The dispositive question, then, is whether there is a genuine issue that any of the defendants displayed reckless disregard in publishing the two factual statements. Because this issue implicates the defendants' state of mind, we approach it with due respect for the difficulty of granting summary judgment dismissing the complaint. Maressa v. New Jersey Monthly, supra, 89 N.J. [176] at 197 n. 10. Nonetheless, we recognize also that summary judgment practice is particularly well-suited for the determination of libel actions, the fear of which can inhibit comment on matters of public concern. By discouraging frivolous defamation actions, motions for summary judgment keep open lines of communication to the public on such issues. Id. at 196-98; Kotlikoff v. The Community News, supra, 89 N.J. [62] at 67. [Id. at 157].
The summary dismissal of this issue on a merits basis would thus require a showing that plaintiff's claim was "frivolous."
Although defendants also made a motion for summary judgment on the basis of the lack of legal merit of plaintiff's claims, the trial court here granted the motion on the basis only of the law of the case. The Supreme Court, by reference to Dairy Stores, however, encouraged the use of the summary judgment procedure here only on the basis of the merits of the case. Furthermore, in the preceding sentence, the Court made a pragmatic observation that the issues on retrial "may be cast in a different evidentiary light." 104 N.J. at 285. Where a decision of the Supreme Court has substantially changed the law governing the principal claims of a case, an earlier Appellate Division ruling in the case on a related claim should not be independently enforced on remand to thwart the effect of the Supreme Court's action.
In sum, the only logical construction of the Supreme Court's language and the rejection of its own opportunity to dismiss the case is that the Court did not intend for the law of the case to apply in a summary dismissal of this action. Since the Court directed that "[t]he matter be remanded for retrial," 104 N.J. at 285, the case should be retried.
Reversed and remanded for retrial in accordance with this opinion and the prior remand of the Supreme Court.
NOTES
[1] Alternatively, whether or not the trial judge was bound under the law of the case doctrine applicable to an Appellate Division remand, the issue is again before us, and we are convinced that there is a sufficient new legal and factual posture of this case for there to be a full and fair new hearing, applying the Supreme Court's new standards.
[2] In the light most favorable to plaintiff's case, the facts could show: One of the editors, who was also a lawyer, told the reporter that the story raised serious questions about the former banker, implying that the newspaper realized the gravity of the allegations. The reporter then sent an assistant to examine the public records on the horse farm which was necessary because the horse farm was mentioned on the face of the mortgage. The recording office closed before the assistant had an opportunity to make any inquiries, and the reporter never made any further attempts to view the documents or to discover what the connection was between the horse farm and the mortgage. These public records, however, would have disclosed the fact that a 5 1/4 million dollar farm was the principal collateral for a 2 1/4 million dollar loan.

Also, although the reporter testified that he checked his story by talking to the bank president, plaintiff, the county clerk and a lawyer, both the banker and plaintiff denied the significance that the reporter attributed to the mortgage. And contrary to the reporter's testimony, the County Clerk testified that he never explained the legal significance of the mortgage to the reporter. Finally, while the editor-lawyer directed the reporter to confirm the reporter's conclusions about the meaning of the mortgage with a real estate lawyer, the reporter merely showed a lawyer, who he met on the street, the first page of the mortgage. The reporter testified that the lawyer's interpretation of the mortgage was consistent with his own understanding, and the newspaper shielded the lawyer's identity under the Shield Law. But plaintiff believes and has some proof that the source is plaintiff's lawyer's new partner who remembers talking to the reporter on the street about plaintiff's mortgage; the reporter's local counsel later called this attorney, leading plaintiff to the conclusion that reporter told the local counsel the identity of his "confidential source." However, the attorney states that he never even discussed the mortgage with the reporter.
[3] Plaintiff has not failed to pursue these issues. Following the Supreme Court's decision, plaintiff filed a motion for reconsideration of the issues raised by plaintiff on his cross-appeal which were not addressed by the Court which included the issues raised in the present motion in limine. The Supreme Court denied the petition commenting that: "We express no view in respect of the merits of the issues that are the subject of the within motion."