NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3567-15T2

KIM GLUCKER and OYVIND
KARLSEN, her husband,

 Plaintiffs-Appellants,

v.

ROBERT BARBALINARDO, M.D., and
MONTCLAIR SURGICAL ASSOCIATES,

 Defendants-Respondents.
————————————————————————————————————

 Argued September 12, 2017 – Decided September 26, 2017

 Before Judges Reisner and Hoffman.

 On appeal from Superior Court of New Jersey,
 Law Division, Essex County, Docket No. L-2373-
 13.

 Ernest P. Fronzuto argued the cause for
 appellants (Fronzuto Law Group, attorneys; Mr.
 Fronzuto, of counsel and on the briefs; Casey
 Anne Cordes, on the briefs).

 Louis A. Ruprecht argued the cause for
 respondents (Ruprecht Hart Weeks &
 Ricciardulli, LLP, attorneys; Daniel B.
 Devinney, on the brief).

PER CURIAM
 In this medical malpractice case, plaintiffs Kim Glucker and

her husband, Oyvind Karlsen,1 appeal from the March 18, 2016 Law

Division order granting the summary judgment dismissal of their

claims against defendant Robert Barbalinardo, M.D., a board-

certified general surgeon, and his surgical group, defendant

Montclair Surgical Associates, P.A. Plaintiffs also appeal from

an order, entered the same day, which denied their cross-motion

for waiver, pursuant to N.J.S.A. 2A:53A-41(c).2 Plaintiffs filed

suit after plaintiff suffered a ruptured spleen during a routine

colonoscopy performed by defendant. Because we conclude

plaintiffs satisfied the good faith standard of the waiver

provision of the Patients First Act, we reverse both orders under

review and remand for trial.

1
 For ease of reference, we refer to Kim Glucker individually as
plaintiff and Dr. Barbalinardo as defendant.
2
 N.J.S.A. 2A:53A-41(c) is part of the New Jersey Medical Care
Access and Responsibility and Patients First Act (Patients First
Act or Act), N.J.S.A. 2A:53A-37 to -42. One provision of the Act,
N.J.S.A. 2A:53A-41, "'establishes qualifications for expert
witnesses in medical malpractice actions' and 'provides that an
expert must have the same type of practice and possess the same
credentials, as applicable, as the defendant health care provider,
unless waived by the court.'" Nicholas v. Mynster, 213 N.J. 463,
479 (2013) (quoting Assembly Health & Human Services Committee,
Statement to Assembly Bill No. 50 at 20 (Mar. 4, 2004)). Commonly
referred to as "the waiver provision," N.J.S.A. 2A:53A-41(c)
"allows an alternative to the kind-for-kind specialty requirement
if a plaintiff has made a good faith effort but failed to identify
an expert physician in the specialty area available to testify."
Id. at 484.

 2 A-3567-15T2
 I

 These are the most pertinent facts. On December 5, 2011,

plaintiff went to defendant for a routine colonoscopy. Defendant,

a board-certified general surgeon who performs colonoscopies, does

not have a sub-specialty. Plaintiff alleges that defendant

negligently ruptured her spleen during the course of the

colonoscopy. Following the colonoscopy, plaintiff experienced

increasing abdominal pain and went to the emergency room at

Mountainside Hospital, where doctors diagnosed an injury to her

spleen. On December 6, 2011, surgery to repair the injury proved

unsuccessful, and the next day, plaintiff underwent an exploratory

laparotomy and the removal of her spleen. Plaintiff remained in

intensive care until December 11, and went home on December 12,

2011.

 After plaintiffs filed their complaint, they timely served

an affidavit of merit (AOM) from a general surgeon, Peter Sarnelle,

M.D., and an AOM from a gastroenterologist, Maxwell Chait, M.D.

Plaintiffs then moved to confirm that both experts qualified to

submit AOMs, pursuant to N.J.S.A. 2A:53A-41. On October 25, 2013,

the court ruled that Dr. Sarnelle's AOM satisfied plaintiffs' AOM

requirements, but that Dr. Chait's AOM did not.

 In March 2014, Dr. Sarnelle withdrew as an expert due to

illness. On February 9, 2015, plaintiffs served two reports from

 3 A-3567-15T2
proffered experts: Dr. Chait and an infectious disease expert,

Richard K. Sall, M.D.

 On February 18, 2015, defendants filed a motion to bar the

report of Dr. Chait. Plaintiffs filed a cross-motion to allow for

an exception under N.J.S.A. 2A:53A-41(c). The motion judge barred

Dr. Chait from testifying as an expert and denied plaintiff's

cross-motion for an exception. However, the judge extended

discovery for ninety days and advised plaintiffs' counsel he could

return to have the court further address his request for an

exception, after completing additional searching for a replacement

expert.

 On July 7, 2015, plaintiffs' counsel again filed a motion to

permit a waiver under N.J.S.A. 2A:53A-41(c), citing a "good faith"

effort since "none of the seventeen (17) potential surgical

experts" he contacted "were able to provide an opinion in this

matter." On August 7, 2015, the same judge heard oral argument,

initially found that plaintiffs "technically . . . met" the

requirements of N.J.S.A. 2A:53A-41(c) by "checking off the boxes."

However, the judge expressed concern that the certification of

plaintiffs' counsel lacked details about why the seventeen other

potential doctors could not serve as experts, and thus, he could

not discern a "good faith effort." On these grounds, the judge

denied the motion, but gave plaintiffs' counsel thirty days to

 4 A-3567-15T2
provide a supplemental certification, explaining, "I want more

information on why the experts turned you down."

 On September 1, 2015, plaintiffs' counsel submitted a

supplemental certification, detailing his extensive efforts to

secure a substitute expert for Dr. Sarnelle. These efforts

"included contacting attorney acquaintances, contacting the

memberships of attorney organizations and contacting a service

[which] finds experts for medical malpractice review." While the

expert witness service had fifty-eight general surgeons in its

databank, "most were excluded immediately since they do not perform

screening colonoscopies." The seven general surgery experts who

did perform colonoscopies "were all sub-certified in colo-rectal

surgery."

 Plaintiff's counsel then contacted a second expert witness

referral service, which had forty-nine active general surgery

experts in its database. None of the experts proved capable of

providing the required testimony. Plaintiff's counsel then

summarized his efforts to obtain a substitute board-certified

general surgeon expert:

 In all, my firm has contacted colleagues,
 attorney organizations and two expert referral
 services, which represents a broad cross-
 section of referral sources for a medical
 expert referral. From the expert referral
 services alone, we know that over 100 general
 surgery experts were considered; however they

 5 A-3567-15T2
 did not meet the case specific qualification
 requirements. This, of course, does not
 include the pool of general surgery experts
 that cannot be quantified from colleagues and
 attorney organization contacts, which
 informally reviewed their potential general
 surgery expert pool and determined that there
 was not a fit for this case so as to not
 provide a referral. Ultimately,
 notwithstanding our diligent efforts, we have
 been unable to locate a general surgery expert
 that meets the qualifications requirements of
 this case."

 On November 20, 2015, the judge heard oral argument, and

remained unsatisfied with the supplemental certification and

continued to deny plaintiffs' waiver motion. The judge expressed

concerns plaintiffs were circumventing the statute, but denied

defendants' motion for summary judgment, citing "some alternatives

. . . short of summary judgment."

 On February 2, 2016, defendants again moved for summary

judgment. On March 2, 2016, plaintiffs again cross-moved for a

waiver under N.J.S.A. 2A:53A-41(c). On March 18, 2016, the case

came before a different judge (the second judge) for oral argument.

Plaintiffs' counsel again argued his certification set forth

sufficient good faith efforts to warrant the grant of a waiver:

 This is a case where a general surgeon is doing
 a screening colonoscopy. Most general
 surgeons, that is not within the scope of what
 they do. . . . [T]he vast majority of
 screening colonoscopies are done by
 gastroenterologists.

 6 A-3567-15T2
 . . . .

 And then we had . . . those expert referral
 services, they have . . . over 100 general
 surgery experts within their database. None
 of them met the case specific qualifications
 required in this case. General surgeon, not
 sub-certified in any other field, [who]
 performs screening colonoscopies.

 The second judge agreed with plaintiffs, ultimately

acknowledging that a waiver was proper in this case. However,

apparently believing the law of the case doctrine precluded him

from granting the waiver, the second judge denied plaintiffs'

waiver request and granted defendants' motion for summary

judgment. This appeal followed.

 II

 In reviewing a grant of summary judgment, we apply the same

standard under Rule 4:46-2(c) that governs the trial court. See

Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436,

445-46 (2007). We "consider whether the competent evidential

materials presented, when viewed in the light most favorable to

the non-moving party, are sufficient to permit a rational

factfinder to resolve the alleged disputed issue in favor of the

non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142

N.J. 520, 540 (1995).

 7 A-3567-15T2
 A.

 In 2004, the Legislature enacted the New Jersey Medical Care

Access and Responsibility and Patients First Act (Act), N.J.S.A.

2A:53A-37 to -42. The Act set forth detailed standards for

testifying experts, "generally requiring the challenging expert

to be equivalently-qualified to the defendant[.]" Ryan v. Renny,

203 N.J. 37, 52 (2010). However, the Act further provided "for

waiver of the newly-tightened requirements in certain

circumstances[.]" Id. at 53. Specifically,

 [a] court may waive the same specialty or
 subspecialty recognized by the American Board
 of Medical Specialties or the American
 Osteopathic Association and board
 certification requirements of this section,
 upon motion by the party seeking a waiver, if,
 after the moving party has demonstrated to the
 satisfaction of the court that a good faith
 effort has been made to identify an expert in
 the same specialty or subspecialty, the court
 determines that the expert possesses
 sufficient training, experience and knowledge
 to provide the testimony as a result of active
 involvement in, or full-time teaching of,
 medicine in the applicable area of practice
 or a related field of medicine.

 [N.J.S.A. 2A:53A-41(c).]

 In Ryan, our Supreme Court reversed the decision of this

court "declaring that [the plaintiff] failed to satisfy the good

faith standard of the waiver provision of N.J.S.A. 2A:53A-

41(c)[.]" Ryan, supra, 203 N.J. at 61. In reversing, the Court

 8 A-3567-15T2
found that a plaintiff satisfied the required good faith standard

and permitted a non-board-certified physician to testify that the

actions of a board-certified specialists did not meet the standard

of care. Id. at 45. The Court determined that counsel for the

plaintiff undertook efforts that were sufficient for the good

faith effort requirement. Id. at 56. The Court emphasized the

plain language of the waiver provision, which "directs the judge

to focus on the 'effort' the moving party made to obtain a

statutorily-authorized expert, and not on the reasons why a

particular expert or experts declined to execute an affidavit."

Id. at 55.

 Indeed, the very existence of the waiver
 provision makes it obvious to us that the
 Legislature did not intend a malpractice case
 to stand or fall solely on the presence or
 absence of a same-specialty expert. If that
 were the case, the Legislature would not have
 provided for waiver or, at the very least,
 would have declared that waiver was somehow
 limited by the substance of an expert's
 refusal to execute an affidavit. It did not
 do so.

 By the broad waiver provision, the
 Legislature explicitly recognized that there
 would be legitimate malpractice claims for
 which a plaintiff would not be able to obtain
 an affidavit of merit from an equivalently-
 qualified expert or even from an expert in the
 same field. It thus created a safety valve for
 those cases by providing the judge with broad
 discretion to accept an expert with
 "sufficient training, experience and
 knowledge to provide the testimony[,]" but

 9 A-3567-15T2
 only if plaintiff made a good faith effort to
 satisfy the statute. The Legislature left it
 to the "satisfaction of the court" to
 determine whether an honest "effort" was made
 to identify an expert in the same specialty
 or subspecialty. It is the "effort" of the
 movant that is the focal point of the waiver
 provision.

 [Id. at 55-56]

 B.

 The principal issue on this appeal is whether the second

judge properly applied the law of the case doctrine in upholding

the decision of the first judge, denying plaintiffs a waiver under

N.J.S.A. 2A:53A-41(c). Plaintiffs argue the second judge

erroneously applied the law of the case doctrine by following the

previous ruling that plaintiffs failed to meet the requirements

for a waiver pursuant to N.J.S.A. 2A:53A-41(c).

 The law of the case doctrine provides "that a legal decision

made in a particular matter 'should be respected by all other

lower or equal courts during the pendency of that case.'" Lombardi

v. Masso, 207 N.J. 517, 538 (2011) (quoting Lanzet v. Greenberg,

126 N.J. 168, 192 (1991)); State v. Reldan, 100 N.J. 187, 203

(1985). Although non-binding, the doctrine is "intended to

'prevent relitigation of a previously resolved issue'" in the same

case, "by a different and co-equal court." Lombardi, supra, 207

 10 A-3567-15T2
N.J. at 538-39 (quoting In re Estate of Stockdale, 196 N.J. 275,

311 (2008)).

 However, the law of the case "doctrine is not an absolute

rule as 'the court is never irrevocably bound by its prior

interlocutory ruling[.]'" Jacoby v. Jacoby, 427 N.J. Super. 109,

117 (App. Div. 2012) (citations and internal quotation marks

omitted). Thus, when "there is substantially different evidence"

from that available at the time of the prior decision, "new

controlling authority, or the prior decision was clearly

erroneous[,]" the doctrine does not apply. Sisler v. Gannett Co.,

222 N.J. Super. 153, 159 (App. Div. 1987), certif. denied, 110

N.J. 304 (1988). The rule is discretionary, and the doctrine is

"applied flexibly to serve the interests of justice." State v.

Reldan, 100 N.J. 187, 205 (1985).

 Here, we conclude the second judge mistakenly failed to

exercise his discretion when he declared himself "bound by" the

first judge's previous ruling. Pursuant to the above principles,

he was not required to follow the previous decision. See State

v. Hale, 127 N.J. Super. 407, 411 (App. Div. 1974). Because the

prior decision was clearly erroneous, and the second judge agreed

with plaintiffs that the record supported the grant of a waiver

under N.J.S.A. 2A:53A-41(c) but incorrectly believed he could not

 11 A-3567-15T2
grant the waiver, the second judge's failure to exercise his

discretion warrants reversal of both orders under review.

 The record here clearly establishes that plaintiffs made an

honest effort to identify an expert in the same specialty or

subspecialty as defendant. As Justice Long explained in Ryan, "It

is the 'effort' of the movant that is the focal point of the waiver

provision." Ryan, supra, 203 N.J. at 56. Plaintiffs' efforts to

identify and retain a qualified expert here were extensive, and

significantly greater than the efforts found adequate in Ryan.

Ibid. Contrary to Ryan, the first judge mistakenly focused on

"the reasons why a particular expert or experts declined" to serve.

Id. at 55.

 Reversed and remanded. We do not retain jurisdiction.

 12 A-3567-15T2