**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2629-23

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

JORGE E. ROJAS,

     Defendant-Respondent.

_____

Argued December 5, 2024 – Decided December 19, 2024

Before Judges Mawla, Natali, and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 23-09-1683.

Samuel J. Marzarella, Chief Appellate Attorney, argued the cause for appellant (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel J. Marzarella, of counsel and on the briefs).

Ernest A. Ryberg, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Ernest A. Ryberg, of counsel and on the brief; Vita S. Mennie, on the brief).

PER CURIAM

By leave granted, the State appeals from the March 25, 2024 order granting defendant Jorge Rojas's motion to dismiss his indictment for second-degree disarming a law enforcement officer, N.J.S.A. 2C:12-11(a).  For the reasons set forth in this opinion, we reverse.

On May 17, 2022, at approximately 8:15 p.m., defendant was arrested by Tuckerton Borough police Sergeant Ryan Cahill and Patrolman Christopher Tereszczyn after the officers responded to a massage parlor in the borough on a report of an intoxicated male attempting to leave the business naked.  The State alleges, when the officers arrived, they encountered defendant naked.  They asked him to put his pants on several times and he refused.  Defendant began grabbing his genitals and making other gestures toward the officers.  The officers placed him under arrest.  While they were handcuffing him, defendant spit at Sergeant Cahill.  As they were attempting to place defendant in the patrol car, he spit on Patrolman Tereszczyn and yelled profanities and racial slurs at the officers.  He was transported to the police station.

The officers were attempting to place defendant in the holding cell when they saw he was holding a rubber band in his clenched fist.  He refused to relinquish it, began fighting with Patrolman Tereszczyn, and kicked him.  After

2

defendant kicked Patrolman Tereszczyn, Sergeant Cahill stepped inside the holding cell to assist and brought defendant under control. As Patrolman Tereszczyn was leaving the holding cell, defendant attempted to kick him again. Defendant then grabbed Sergeant Cahill's vest and threatened to kill him.

According to Sergeant Cahill, defendant continued to grab his vest and pull him closer while shouting, "I could kill you and kill me." Sergeant Cahill repeatedly instructed defendant to stop and release his vest, but he refused. Defendant then shifted Sergeant Cahill's vest and grabbed the handle of his service revolver, while repeatedly stating, "I need you to kill me." The incident was captured on video from body-worn cameras (BWC) worn by both officers. The State alleges the video from Patrolman Tereszczyn's BWC shows defendant grabbing Sergeant Cahill's gun twice. Defendant was processed, transported to the Ocean County jail, and then to the hospital to treat injuries he sustained. During transport, defendant threatened to sexually assault Patrolman Tereszczyn's mother and kill his family. At the hospital, he continued to yell profanities and racial slurs at Patrolman Tereszczyn and threatened to kill him with the officer's gun.

On August 25, 2022, defendant was indicted for second-degree disarming a law enforcement officer, among other offenses that are not relevant to this

appeal. The State did not play the BWC videos for the grand jury. Sergeant Cahill testified and was asked "at one point, [defendant] managed to grab the handle of your service weapon in an attempt to pull it out of its holster[?]" He responded affirmatively to the question.

Defendant moved to dismiss, arguing "the State misrepresented his mental state" and "his actions as captured on video" and provided "false testimony and insufficient evidence." Defendant also argued Sergeant Cahill violated the department's standard operating procedure (SOP) that "[o]fficers shall secure their firearm prior to processing a detainee." Defendant contended the State was required to advise the grand jury of this alleged SOP violation because it was exculpatory. The State denied Sergeant Cahill violated the SOP and asserted, even if he did, the alleged violation was not exculpatory evidence that it was required to present to the grand jury.[1]

On August 21, 2023, the court entered an order granting the motion supported by a written opinion. The court found: "[E]lement one of N.J.S.A. 2C:12-11(a) requires that '[t]here was a firearm . . . in the possession of a law enforcement officer . . . .' Therefore, the failure of [Sergeant] Cahill to abide by

---

[1] We assume, as did the trial court, Sergeant Cahill violated the SOP. Whether he did in fact violate the SOP is a matter left for the trial judge to decide. We do not intend to express an opinion on that question.

the [SOP] put in place regarding firearms in the booking room security directly relates to an element of the disarming offense."

The court also noted "a sign on the counter in the booking room prominently displayed the required procedure in large red letters on a white background: 'SERVICE WEAPONS PROHIBITED IN BOOKING.'" The court determined Sergeant Cahill's "violation of the firearms policy . . . is relevant to the mens rea aspects of the disarming charge under [State v. Lora, 465 N.J. Super. 477 (App. Div. 2020)] for a determination whether the officer induced or caused the incident by improperly bringing a firearm into the holding cell."

The court reviewed the BWC video that was not shown to the grand jury and noted "defendant's hand can be seen touching the side of the frame of a large plastic tactical holster worn by [Sergeant] Cahill, . . . [b]ut the video does not show defendant touch the grip or any other portion of the actual firearm nor does it show any attempt to remove the firearm from the holster." If the State showed the BWC video, the grand jury would also have seen "defendant's mental condition and the events which occurred in the booking room . . . ."

The court found "the grand jury was deprived of this vital information, which directly effects an element of the disarming offense" because "the State did not show the BWC footage to the grand jurors or otherwise describe it in an

accurate fashion." This "deprived the grand jury of the information necessary to determine if there was 'some evidence' defendant 'purposely' attempted to disarm [Sergeant] Cahill." The court found,

> [h]ad the grand jury been presented with either the BWC footage (or an accurate portrayal of same), defendant's intoxicated and altered mental state, and the failure of the officers to abide by operating procedures prohibiting firearms in the booking room and holding cell, a grand jury could have reasonably concluded the crime of disarming did not occur.

The court's decision did "not rest simply on" any one of those factors "but rather [on] the totality of all of these circumstances."

On September 21, 2023, the State re-indicted defendant for second-degree disarming a law enforcement officer, among other charges, in a superseding indictment by a different grand jury. Sergeant Cahill testified, and the grand jury viewed relevant portions of the BWC videos that were not shown to the prior grand jury. The State did not advise the grand jury that Sergeant Cahill allegedly violated the SOP by entering the holding cell with his firearm.

Defendant moved to dismiss the entire indictment, arguing the State did not present evidence in its possession that "clearly shows [d]efendant was intoxicated, suicidal, prone to anxiety, in moments of lucidity was polite and respectful without any animosity, apparent from [d]efendant's behavior and

statements captured by the [BWC] recordings."   Defendant also moved to dismiss the indictment for disarming a law enforcement officer, arguing the State did not advise the grand jury that Sergeant Cahill violated the SOP which defendant could use to "present an affirmative defense of objective entrapment."

On March 5, 2024, defendant's case was transferred to a new judge for reasons unrelated to the issues on appeal.  The new judge heard oral argument on March 21.  On March 25, the court entered an order granting defendant's motion to dismiss the indictment for disarming a law enforcement officer supported by a written opinion dated March 22.  The court denied defendant's motion to dismiss the indictment in its entirety "due to omissions of additional evidence of potential insanity, diminished capacity, and pathological intoxication defenses."  The court found the State did not "with[o]ld from the grand jury exculpatory information or a charge regarding a defense that it was compelled by law to present."

The court rejected defendant's contention the State failed to advise the grand jury of a possible entrapment defense.  The court determined:

> Although [Sergeant] Cahill should have disarmed under
> department policy prior to being in the processing area
> where the [d]efendant was being processed, he was
> exercising his law enforcement authority in an attempt
> to control a rapidly escalating incident precipitated by
> the [d]efendant's actions of resisting and struggling

7

with Patrolman Tereszczyn. There is no evidence to support an entrapment defense in this matter and the failure of the State to present this as a possible defense to the [g]rand [j]ury does not taint the proceedings.

The court, however, found the prior judge's August 21, 2023 written opinion "held that 'the grand jurors should have been told the officers breached'" the SOP. The court continued,

[d]espite the requirements set forth in the [c]ourt's August 21, 2023 [o]rder, in the State's re-presentation of this count to the grand jury on September 21, 202[3], the State did not inform the grand jurors that the officers were under a duty to disarm themselves before processing . . . [d]efendant pursuant to their departmental regulations. As the [c]ourt previously noted, informing the grand jurors of the officers' breach of this fundamental rule may have negated an element of the disarming offense.

Further, had the [State] informed the grand jurors that the responding officers violated a basic regulation designed to preserve their own safety as well as the safety of others in the processing area by not checking their firearms before going into this area, the grand jury may have found that, by disregarding his duty to disarm while in the processing area, the officer was not acting in performance of his duties at the time – which would potentially further negate an element of the charge.

On April 16, 2024, the court filed an amplification of its March 22, 2024 written opinion pursuant to Rule 2:5-1(b). The court asserted "the August 21, 2023 [o]rder remains unchallenged and presents the law of [the] case, it must be

consistently adhered to as the case proceeds and not subject to inconsistent future rulings because the case was transferred to another judge."

On appeal, the State raises the following points for our consideration.

> POINT [I]:
>
> THE JUDGE BELOW COMMITTED LEGAL ERROR AND THIS CASE MUST BE VIEWED DE NOVO.
>
> POINT [II]:
>
> THE STATE DID NOT FAIL TO PRESENT CLEARLY [EXCULPATORY] EVIDENCE THAT DIRECTLY NEGATED DEFENDANT'S GUILT TO THE GRAND JURY.
>
> POINT [III]:
>
> THE TUCKERTON POLICE DEPARTMENT [SOP] DOES NOT NEGATE GUILT AND IS NOT EXCULPATORY.

We review a court's decision to apply the law of the case doctrine de novo. See State v. K.P.S., 221 N.J. 266, 277 (2013). The law of the case doctrine provides "that a legal decision made in a particular matter 'should be respected by all other lower or equal courts during the pendency of that case.'" Lombardi v. Masso, 207 N.J. 517, 538 (2011) (quoting Lanzet v. Greenberg, 126 N.J. 168, 192 (1991)). Although non-binding, the doctrine is "intended to 'prevent relitigation of a previously resolved issue'" in the same case "by a different and

co-equal court." Id. at 538-39 (first quoting In re Est. of Stockdale, 196 N.J. 275, 311 (2008) then citing Gonzalez v. Ideal Tile Imp. Co., 371 N.J. Super. 349, 355-56 (App. Div. 2004)).

However, the law of the case "doctrine is not an absolute rule as 'the court is never irrevocably bound by its prior interlocutory ruling[.]'" Jacoby v. Jacoby, 427 N.J. Super. 109, 117 (App. Div. 2012) (quoting Sisler v. Gannett Co., 222 N.J. Super. 153, 159 (App. Div. 1987)). Thus, when "there is substantially different evidence" from that available at the time of the prior decision, "new controlling authority, or the prior decision was clearly erroneous[,]" the doctrine does not apply. Sisler, 222 N.J. Super. at 159 (citing State v. Reldan, 100 N.J. 187, 204 (1985)). The rule is discretionary, and the doctrine is "applied flexibly to serve the interests of justice." Reldan, 100 N.J. at 205.

We conclude the court incorrectly dismissed the indictment based on the law of the case doctrine. The August 21, 2023 order was based on the court's finding that numerous factors tainted the grand jury presentation. The court did not find the failure to advise the grand jury of the alleged SOP violation, standing alone, required dismissal of the indictment. The court's subsequent determination that failure to advise the second grand jury of the alleged SOP violation required dismissal of the indictment based on the law of the case

10

doctrine was incorrect. In addition, nowhere in the August 21, 2023 order is there any "requirement" that the State present that or any other evidence to the grand jury in a later presentment. Again, the decision was based on numerous factors and evidence the court determined "should have been" presented to the grand jury. The State was not "required" to advise the grand jury of the alleged SOP violation based on the law of the case.

We are convinced the court incorrectly determined the alleged SOP violation was "exculpatory" evidence the State was obligated to present to the grand jury. Where, as here, "the decision to dismiss [an indictment] relies on a purely legal question . . . we review that determination de novo." State v. Twiggs, 233 N.J. 513, 532 (2018).

"[O]ur courts have long held that a dismissal of an indictment is a draconian remedy and 'should not be exercised except on "the clearest and plainest ground."'" State v. Peterkin, 226 N.J. Super. 25, 38 (App. Div. 1988) (quoting State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 18-19 (1984)). A grand jury indictment "'should be disturbed only' . . . when the indictment is manifestly deficient or palpably defective." State v. Hogan, 144 N.J. 216, 228-29 (1996) (quoting N.J. Trade Waste Ass'n, 96 N.J. at 18). "In seeking an indictment, the prosecutor's sole evidential obligation is to present a prima facie case that the

accused has committed a crime." Id. at 236. "Credibility determinations and resolution of factual disputes are resolved almost exclusively for the petit jury." Id. at 235. That is not to say, however, that the State may "deceive the grand jury or present its evidence in a way that is tantamount to telling the grand jury a 'half-truth.'" Id. at 236. The Hogan Court explained:

> [T]he grand jury cannot be denied access to evidence that is credible, material, and so clearly exculpatory as to induce a rational grand juror to conclude that the State has not made out prima facie case against the accused. If evidence of that character is withheld from the grand jury, the prosecutor, in essence, presents a distorted version of the facts and interferes with the grand-jury's decision-making function.
>
> [Ibid. (citations omitted).]

Pursuant to Hogan, there are two factors to consider in evaluating potentially exculpatory evidence. First, the evidence must directly negate guilt by squarely refuting an element of the crime. Id. at 237. Second, the evidence must be clearly exculpatory. Ibid. The second requirement demands "an evaluation of the quality and reliability of the evidence [and its] . . . exculpatory value . . . should be analyzed in the context of the nature and source of the evidence, and the strength of the State's case." Ibid. The Court cautioned that an indictment should be dismissed on this ground "only after giving due regard to the prosecutor's own evaluation of whether the evidence is 'clearly

12

exculpatory,'" and "only in the exceptional case will a prosecutor's failure to present exculpatory evidence to a grand jury constitute grounds for challenging an indictment." Id. at 238-39.

The elements of the crime of disarming a law enforcement officer are:

> (1) There was a firearm . . . in the possession of a law enforcement officer . . . .
>
> (2) The defendant, knowingly took unlawful control over that firearm . . . .
>
> (3) The officer was acting in the performance of [their] duties, and was either in uniform or exhibited evidence of [their] authority.
>
> . . . .
>
> In order to prove the defendant attempted to exercise unlawful control over the firearm . . . ., the State must prove . . . the defendant purposely attempted to exercise unlawful control over the firearm . . . .
>
> [Model Jury Charges (Criminal), "Disarming A Law Enforcement Officer (N.J.S.A. 2C:12-11(a) & (b))" (approved June 1997).]

There is no dispute the State presented evidence sufficient to establish a "prima facie case that" defendant committed the charged offense. Hogan, 144 N.J. at 236. The State demonstrated Sergeant Cahill was in possession of a firearm and in uniform while performing his duties and defendant purposely attempted to exercise unlawful control of the firearm. The video from Patrolman

Tereszczyn's BWC shows defendant grabbing for Sergeant Cahill's firearm while shouting "I need you to kill me." The State plainly satisfied its burden to establish a prima facie case that defendant committed the offense.

In its August 21, 2023 decision, the court determined evidence of the alleged SOP violation was relevant "for a determination whether the officer induced or caused the incident by improperly bringing a firearm into the holding cell." Even if such evidence might be admissible at trial for that purpose, it does not mean the State was required to present it to the grand jury as exculpatory evidence. The court's reliance on Lora was misplaced.

In Lora, we determined the trial court correctly permitted a defendant to introduce evidence of an alleged violation of "[p]ursuit [g]uidelines" in a case alleging defendant committed aggravated assault by "knowingly" or "recklessly" causing injury to an officer during a motor vehicle chase. 465 N.J. Super. at 499. We reasoned "[i]f the jury considered the officer's actions in light of the [pursuit guidelines] and determined [the officer] induced or caused the accident, the mens rea element of aggravated assault of a law enforcement officer would not be met." Id. at 500. We did not find the State was required to present such

evidence to the grand jury because it was exculpatory; only that it was properly admitted at trial based on the specific facts of that case.[2]

The alleged SOP violation at issue in this case does not "directly negate guilt" by "squarely refut[ing] an element of the crime," nor is it "clearly exculpatory" as defined in Hogan. See 144 N.J. at 237. If it is admitted as evidence, it may be relevant to the jury's determination of whether defendant purposely attempted to exercise control over the firearm. However, evidence is not exculpatory merely because it may be relevant to an issue in the case. In addition, in its March 22, 2024 opinion, the court specifically rejected defendant's contention that the SOP violation was relevant to a possible "entrapment" defense. By doing so, the court effectively disavowed the prior determination that the evidence was relevant to determining if "the officer induced or caused the incident by bringing a firearm into the holding cell."

We are not persuaded by the court's finding that the evidence "may have" led the grand jury to find, "by disregarding his duty to disarm while in the processing area, [Sergeant Cahill] was not acting in the performance of his duties at the time – which would potentially further negate an element of the

---

[2] The admissibility of the alleged SOP violation in this case is left to the sound discretion of the trial judge. We do not intend to express any opinion on the admissibility of that or any other evidence.

charge." For one thing, in analyzing defendant's entrapment argument, the court specifically found Sergeant Cahill "was exercising his law enforcement authority in an attempt to control a rapidly escalating incident" at the time. Moreover, defendant's argument is premised on the contention that Sergeant Cahill was subject to the SOP because he was performing his duties as a law enforcement officer. The possibility that the evidence might have led the grand jury to reach an unwarranted conclusion does not mean the evidence is exculpatory.

We are satisfied evidence of the alleged SOP violation does not "directly negate guilt" by "squarely refuting an element of the crime," nor is it "clearly exculpatory." Ibid. The State therefore was not required to present it to the grand jury. The March 25, 2024 order dismissing the indictment for disarming a law enforcement officer is reversed.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION