NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2422-12T1

L.T.,

      Plaintiff-Respondent,

v.

F.M.,

      Defendant-Appellant.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **November 14, 2014** |
| **APPELLATE DIVISION** |

Argued: October 28, 2014 — Decided: November 14, 2014

Before Judges Reisner, Haas and Higbee.

On appeal from Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-284-08.

Alan L. Zegas argued the cause for appellant (Law Offices of Alan L. Zegas, attorneys; Mr. Zegas and Stephanie G. Forbes, on the briefs).

Brian C. Lundquist argued the cause for respondent (Morris, Downing & Sherred, LLP, attorneys; Douglas C. Gray and Mr. Lundquist, on the brief).

The opinion of the court was delivered by

HAAS, J.A.D.

    Plaintiff obtained a final restraining order (FRO) against defendant in the Family Part and subsequently brought an action

in the Law Division seeking to recover damages for injuries allegedly inflicted upon her by defendant in the assaults that were the subject of the Family Part proceedings. In this appeal, we address the issue of whether defendant was collaterally estopped from arguing in the Law Division action that he did not assault plaintiff. We also consider whether evidence of a prior alleged assault that was not raised in plaintiff's complaint was admissible as habit evidence, and whether plaintiff should have been permitted to introduce the FRO into evidence. Based upon our review of the record and applicable law, we hold that the doctrine of collateral estoppel did not bar defendant from challenging plaintiff's claims in the Law Division action. We also hold that evidence of the prior alleged assault and the FRO should not have been admitted into evidence. Therefore, we reverse and remand for a new trial.

I.

We summarize the procedural history and facts that are relevant to the issues raised on appeal. Between 2000 and February 27, 2008, plaintiff and defendant were in a dating relationship. In 2005, they entered into a written agreement concerning the purchase of a house. Under the terms of the agreement, plaintiff had eighteen months to buy out defendant's interest in the house. During this period, plaintiff would live

in the house and the parties would equally share the monthly mortgage payments. After eighteen months, defendant could put the house up for sale. If defendant elected to sell the house, the agreement provided that plaintiff could delay the sale for an additional year. The eighteen-month term ended in March 2007, and the one-year "grace period" was due to expire in March 2008.

On February 27, 2008, plaintiff obtained a temporary restraining order (TRO) against defendant pursuant to the Prevention of Domestic Violence Act of 1991 (Act), N.J.S.A. 2C:25-17 to -35. As the predicate act in her complaint, plaintiff alleged that, on the morning of February 27, 2008, the parties had an argument after defendant returned from the gym. She stated that defendant spat in her face, pushed her against the bathroom wall, grabbed her neck, and hit her head repeatedly into the wall. According to plaintiff, defendant then took a shower. As he did so, plaintiff left the house, drove to a coffee shop parking lot, and then called the police. Later in the day, plaintiff went to the hospital and was prescribed medication for her injuries.

Plaintiff alleged there had been three other incidents of domestic violence. Plaintiff asserted defendant grabbed her neck and banged her head against a wall on an unspecified date

in April 2007. She stated defendant broke her toe in August 2007, by "stomping" on it while the couple was on a boat. Finally, plaintiff claimed that defendant pushed her down "a small flight of stairs" sometime in November 2007.

Approximately thirty days after the TRO was filed, a Family Part judge conducted a three-day trial at which plaintiff was represented by counsel. Defendant, who is an attorney, was not represented. The parties did not exchange any discovery. Defendant denied all of plaintiff's allegations. At the conclusion of the trial, the judge granted plaintiff's request for a FRO, finding that plaintiff had proven, by a preponderance of the evidence, that defendant assaulted her on February 27, 2008. The judge also found that the April 2007 and August 2007 assaults "occur[red.]" The judge found he did "not have sufficient information or detail to make a finding as to whether [the November 2007] incident occurred or not."

Plaintiff advised the judge she wished to seek compensation for the injuries she sustained in the three assaults. The judge stated that the "issue of compensatory damages" was not yet "ripe" for consideration, and he reserved decision on the request in order to enable the parties to marshal the proofs needed to address the matter. Defendant did not file a motion for leave to appeal from this interlocutory decision.

Rather than pursuing her claim for compensatory damages in the domestic violence case, plaintiff filed a three-count complaint against defendant in the Law Division. Plaintiff alleged defendant assaulted her in April and August 2007, and again on February 27, 2008. Plaintiff sought compensatory damages, punitive damages, and counsel fees. Defendant filed an answer denying plaintiff's allegations.[1]

The Family Part judge initially handled the matter in the Law Division. In July 2010, plaintiff filed a motion for partial summary judgment, arguing that the judge's findings in the prior FRO trial "establish[ed defendant's] liability, as a matter of law, in the present intentional tort action, by operation of the doctrine of collateral estoppel." Following oral argument, the judge denied plaintiff's motion in a thorough oral opinion. The judge also issued a written opinion setting forth his findings of fact and conclusions of law.

The judge stated there were significant procedural differences between the summary proceeding he conducted in the FRO matter and an action in the Law Division seeking to recover

---

[1] Defendant also filed a separate action against plaintiff in the Chancery Division, seeking to enforce the terms of the 2005 agreement concerning the house. The two actions were consolidated in the Law Division, with the contract dispute to be tried separately by the judge, rather than by a jury. On October 3, 2012, however, the parties settled the contract issue and it is not involved in this appeal.

A-2422-12T1

compensatory and punitive damages for an alleged assault. The judge explained,

> a domestic violence hearing is clearly a summary proceeding, held in an "emergency situation." The procedural limitations imposed by the Legislature in achieving the worthy goal of "assur[ing] the victims of domestic violence the maximum protection from abuse the law can provide" are not consistent with a civil action, filed in the Law Division, in which the parties are permitted extensive pre-trial discovery, which New Jersey Courts consistently construe liberally.

Under these circumstances, the judge determined it would be unfair to apply the doctrine of collateral estoppel against defendant in the Law Division action.

By May 2011, responsibility for the matter had been transferred to a different judge. At that point, plaintiff renewed her motion for partial summary judgment and again sought to bar defendant from offering any evidence in defense of plaintiff's claims that he assaulted her on three occasions. Without conducting oral argument, and following an off-the-record meeting with counsel in chambers, the second judge issued an order on May 5, 2011, stating "[d]efendant is collaterally estopped from offering evidence and testimony at the trial in this matter with respect to the Family Court's determination that he assaulted plaintiff on February 27, 2008[.]"

In a very brief letter to the parties concerning the order, the judge did not address or even acknowledge the Family Part judge's prior, contrary ruling.[2] The only explanation provided for the change in course was the judge's statement that "[t]he fact that no timely appeal [of the FRO] was filed is a significant factor in this determination."

At trial, the second judge barred defendant from presenting any evidence contesting plaintiff's claim that he assaulted her on February 27, 2008. Defendant was permitted to contest plaintiff's allegations concerning the April and August 2007 incidents.

In his opening statement, plaintiff's attorney referred to the November 2007 incident, where defendant allegedly threw plaintiff down a flight of stairs. Defendant's attorney objected, pointing out that this incident was not raised in plaintiff's complaint. The judge sustained the objection and stated, "If it's not an affirmative claim, it's not in the case."

On the second day of trial, however, plaintiff's counsel asked plaintiff's son about the November 2007 incident and

---

[2] The judge did not explain why the doctrine of collateral estoppel was applied to the February 27, 2008 incident, but not to the April, August, and November 2007 incidents that were the subject of the FRO trial.

defendant's attorney objected. Plaintiff's attorney replied that he was "submitting [evidence concerning the November 2007 incident] . . . for pattern behavior, habit, custom behavior." The judge then overruled defendant's objection and permitted plaintiff to refer to the November 2007 incident while questioning plaintiff's son. The judge also allowed plaintiff to refer to the incident throughout the rest of the trial.

When plaintiff's attorney again raised the November 2007 incident during his closing argument, and defendant objected, the judge ruled that the incident was not "part of the allegations with regard to a claim for damages, but it is part of the history between the parties. It is admissible as such, and it can be commented upon." The judge did not provide the jury with any instructions regarding how it should consider the testimony presented about the November 2007 incident.

Plaintiff also introduced the TRO and FRO as exhibits. Defendant did not object to the admission of either document in evidence. In response to a question by one of the jurors during defendant's testimony as to whether defendant "was . . . convicted of assault against" plaintiff, the judge advised the jury as follows:

> [T]here was a domestic violence restraining order obtained . . . by [plaintiff], which resulted in an order in [this] County in which there was a finding by a preponderance

8

of the evidence, the same legal standard that applies here in this court, that [defendant] did commit an act of domestic violence, that being assault. It's spelled out in the order, the order is in evidence, and you'll have that with you in the jury room to review.

The significance of that is, and it has to do with . . . the February 27[], 2008 event. And as a result a Judge heard the testimony, made a determination that [defendant] had in fact committed an act of domestic violence, and having found that that predicate act was proven by a preponderance of the evidence, the Judge then ordered certain things to be done by the parties. Chiefly, for them to stay away from each other, not to have any contact, and other things that are set forth in the order that you'll have with you.

The judge did not provide the jury with any instructions during his final charge concerning the permissible use of these orders in its deliberations.

At the conclusion of the trial, the jury found, by a vote of five to one, that defendant assaulted plaintiff in April 2007, but not in August 2007. As noted above, the February 27, 2008 assault was deemed "established." The jury also found, by the same voting margin, that the April 2007 and February 27, 2008 assaults were a proximate cause of plaintiff's injuries, and awarded her $149,500 in damages.

The judge then dismissed the jury but, when plaintiff stated she still wished to seek punitive damages, the judge

ordered the jurors to return to the courtroom.  The parties and the judge then discussed how to handle the issue of punitive damages since those damages had to be proven by clear and convincing evidence, and the February 27, 2008 incident, which the judge deemed "established" by the FRO, had only been proven by a preponderance of the evidence at the FRO trial.  Defendant objected to plaintiff's request for punitive damages because the judge had already told the jury that it had to accept that the February 27, 2008 incident occurred and, therefore, it would be impossible for him to defend against plaintiff's punitive damages claim even under a clear and convincing standard of proof.  The parties broke for lunch without resolving the issue but, over the break, they negotiated a settlement of plaintiff's punitive damages claim.

Plaintiff submitted a form of order, seeking pre-judgment interest.  Defendant submitted a written objection to the order, arguing that plaintiff's interest calculation was incorrect.  Without conducting a hearing, entertaining oral argument, or making findings of fact supporting his decision, the judge accepted plaintiff's calculation of the interest amount and entered a final judgment in plaintiff's favor.  This appeal followed.

II.

On appeal, defendant first argues the judge erred in applying the doctrine of collateral estoppel to the Family Part's findings in the FRO matter. We agree.

"Collateral estoppel is that branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." State v. Gonzalez, 75 N.J. 181, 186 (1977). The party asserting the bar must show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994)).]

However, "'even where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so.'" Id. at 521-22 (quoting Pace v. Kuchinsky, 347 N.J. Super. 202, 215 (App. Div. 2002)); see also State v. Silva, 394 N.J. Super. 270, 275 (App. Div. 2007)

11

(analogously holding that findings from a FRO trial were not binding at a subsequent criminal trial regarding the same conduct). The relevant focus "must center on whether the conditions precedent to the application of the collateral estoppel doctrine have been satisfied and, if so, whether the application of the doctrine is equitable under the circumstances." N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 116 (2011).

In this case, the Family Part judge who presided at the FRO trial applied these standards and, in persuasive oral and written opinions, ruled that defendant could not be collaterally estopped from contesting plaintiff's claims in the Law Division action. Knowing first-hand everything that occurred during the FRO matter, the judge concluded that "the quality [and] extensiveness of the procedures" followed in the FRO case and to be followed in the Law Division were markedly different.

The judge noted that the FRO trial was handled as a summary matter, which deprived the parties of the opportunity to obtain discovery. As a result, the judge stated that, at a FRO trial, "[t]estimony comes in and there is not much of an opportunity, if any sometimes, to beat or rebut that testimony because of a

lack of opportunity for pre-trial discovery."[3] The case was tried approximately thirty days after plaintiff obtained the TRO and, although defendant was a lawyer, he was not represented by counsel at the FRO trial. Medical proofs were not provided by plaintiff and there was no expert testimony concerning the injuries she allegedly suffered. The judge concluded that "unless there has been a fair and full adjudication with all the benefits and opportunities for a full and fair discovery as well[,] which we didn't have in the context of a domestic violence case," the doctrine of collateral estoppel could not be applied against defendant in the Law Division action.

Although not mentioned by the Family Part judge, we also observe that, in the FRO matter, plaintiff had to prove by a preponderance of the evidence that defendant committed an act of domestic violence, namely assault. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). Because she was seeking punitive damages in the Law Division, however, if plaintiff

_____

[3] For example, at the FRO hearing, plaintiff asserted defendant assaulted her on an unspecified date in April 2007. During discovery in the Law Division action, however, defendant learned that plaintiff went to see a chiropractor on April 17, 2007, and complained of pain caused by typing on a computer, rather than from an alleged assault. While plaintiff asserted she misled the chiropractor in order to conceal the fact she was a victim of domestic abuse, the chiropractor's report, if available at the FRO hearing, would have provided defendant with cross-examination material to test plaintiff's credibility.

proved that the alleged assaults were the proximate cause of her injuries, plaintiff would then be required to prove "'by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.'" Long v. Pleasure Prods, Inc., 215 N.J. 48, 58 (2013) (quoting N.J.S.A. 2A:15-5.12). Thus, the ultimate burdens of proof in each action were different.

The Family Part judge's reasoned decision denying plaintiff's motion to bar defendant from contesting plaintiff's allegations concerning the February 27, 2008 incident constituted the "law of the case" and, as such, should have bound the second judge when the case was reassigned for trial. The "law of the case" doctrine embodies "the principle that where there is an unreversed decision of a question of law or fact made during the course of litigation, such decision settles that decision for all subsequent stages of the suit." Slowinski v. Valley Nat'l Bank, 264 N.J. Super. 172, 179 (App. Div. 1993) (citations and internal quotation marks omitted). The rule is based on the policy that, when an issue is litigated and decided in a case, that decision should be the end of that issue. Ibid.

The law of the case "doctrine is not an absolute rule as 'the court is never irrevocably bound by its prior interlocutory ruling[.]'" Jacoby v. Jacoby, 427 N.J. Super. 109, 117 (App. Div. 2012) (citations and internal quotation marks omitted). Thus, when "there is substantially different evidence" from that available at the time of the prior decision, "new controlling authority, or the prior decision was clearly erroneous[,]" the doctrine does not apply. Sisler v. Gannett Co., 222 N.J. Super. 153, 159 (App. Div. 1987), certif. denied, 110 N.J. 304 (1988). In any event, when a judge decides not to follow the law of the case doctrine, it is incumbent on the judge to explain the reasons for that departure.

Here, the second judge mistakenly exercised his discretion by failing to follow the law of the case doctrine. The judge did not acknowledge that the Family Part judge had previously determined, based upon his first-hand knowledge of the FRO proceedings, that it would be unfair to bar defendant from fully defending against plaintiff's allegations concerning the February 27, 2008 incident in the Law Division matter. The second judge also did not make adequate findings of fact or legal conclusions supporting his decision, as required by Rule 1:6-2(f). The judge merely stated that "[t]he fact that no timely appeal was filed [by defendant from the FRO] is a

significant factor in this determination."  However, this "fact" was obviously known to the Family Part judge at the time he denied plaintiff's collateral estoppel motion and, therefore, provided no basis for disturbing the "law of the case."  Sisler, supra, 222 N.J. Super. at 159.[4]

Under these circumstances, we conclude that defendant should have been permitted to defend against plaintiff's allegations concerning the February 27, 2008 incident in the Law Division action.  Because he was incorrectly barred from doing so, we are constrained to reverse and remand for a new trial.

### III.

Defendant next argues that the Law Division judge erred in admitting testimony concerning the November 2007 incident as "habit" evidence.  Again, we agree.

We review a trial judge's evidentiary rulings under "an abuse of discretion standard."  State v. Burns, 192 N.J. 312, 332 (2007).  Our review of a trial judge's purely legal conclusions, however, is plenary.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Under N.J.R.E. 406:

---

[4] Moreover, at the time it was issued, the Family Part order was interlocutory because plaintiff was also seeking damages in that action.  Hence, an appeal of that order would have been interlocutory.

(a) Evidence, whether corroborated or not, of habit or routine practice is admissible to prove that on a specific occasion a person or organization acted in conformity with the habit or routine practice.

(b) Evidence of specific instances of conduct is admissible to prove habit or routine practice if evidence of a sufficient number of such instances is offered to support a finding of such habit or routine practice.

Habit evidence must, with "specificity or proof of regularity," demonstrate a "routine practice probative of . . . conduct" at the event in question. Riley v. Keenan, 406 N.J. Super. 281, 299-300 (App. Div.), certif. denied, 200 N.J. 207 (2009). The conduct in question must be "more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 190 (App. Div. 2006), certif. denied, 189 N.J. 429 (2007) (quoting Sharpe v. Bestop, 158 N.J. 329, 332 (1999)).

Here, the evidence was insufficient to establish habit. Indeed, in overruling one of defendant's objections to plaintiff's testimony concerning the November 2007 incident, the judge stated, "[w]ell, she was responding to the question. There were multiple acts of domestic violence here, and she's describing a tendency of his to act in a certain way. It's

17

habit or behavior, and I'll permit it."  (Emphasis added).

However, as noted above, "a mere tendency to act in a given

manner" does not constitute admissible habit evidence.  Ibid.

The judge later explained that he permitted evidence of the

November 7, 2007 incident because it was "part of the history

between the parties . . . ."  However, this was also not an

appropriate basis for admitting the evidence.  Prior to the

adoption of the Rules of Evidence, the doctrine of res gestae

allowed the admission of evidence of other acts if the other act

"'constitute[d] part[] of the transaction . . . without the

knowledge of which the main facts might not properly be

understood.'"  State v. Rose, 206 N.J. 141, 172 (2011) (quoting

Riley v. Weigand, 18 N.J. Super. 66, 73 (App. Div. 1952)).

However, in Rose, the Court specifically held "that the doctrine

of res gestae no longer has vitality in light of the [adoption

of the] formal Rules of Evidence."  Id. at 146.

Plaintiff now argues[5] that the testimony she elicited

throughout the trial concerning the November 2007 incident was

admissible under N.J.R.E. 404(b), which states:

---

[5] Plaintiff also contends that the Law Division judge erred in
denying her request to amend her complaint to include a claim
for damages arising from the November 2007 incident.  However,
plaintiff did not file a cross-appeal from any of the judge's
rulings.  "It is a fundamental [principle] of appellate practice
that we only have jurisdiction to review orders that have been
(continued)

> evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

When evidence is proffered pursuant to this Rule, the trial court should apply the applicable "criteria of State v. Cofield . . . to determine whether some or all of the challenged evidence [can] be admitted." State v. Lige, 429 N.J. Super. 490, 501 (App. Div. 2013), aff'd o.b., ___ N.J. ___ (2014). The Cofield test[6] requires that:

> [1] The evidence of the other crime must be admissible as relevant to a material issue;
>
> [2] It must be similar in kind and reasonably close in time to the offense charged;
>
> [3] The evidence of the other crime must be clear and convincing; and

---

(continued)
appealed to us." State v. Rambo, 401 N.J. Super. 506, 520 (App. Div.), certif. denied, 197 N.J. 258 (2008), cert. denied, 556 U.S. 1225, 129 S. Ct. 2165, 173 L. Ed. 2d 1162 (2009). Therefore, we are unable to consider plaintiff's contention on this point.

[6] While the Cofield test was first announced in a criminal case, it has been applied in civil proceedings. See, e.g., N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 572-73 (App. Div. 2010); Hill v. Dep't of Corr. Comm'r, 342 N.J. Super. 273, 304 (App. Div. 2001), certif. denied, 171 N.J. 338 (2002).

> [4] The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [State v. Williams, 190 N.J. 114, 122 (2007) (citing State v. Cofield, 127 N.J. 328, 338 (1992)).]

In this case, the Law Division judge did not conduct the required Cofield analysis. Instead, the judge stated he admitted the evidence of the November 2007 incident because it was probative of defendant's "tendency" to act in an assaultive manner toward plaintiff. Because N.J.R.E. 404(b) specifically prohibits the use of other bad acts evidence for this purpose, which was the only purpose identified by plaintiff for its admission at trial, the testimony concerning the November 2007 incident should not have been admitted.

Moreover, even if evidence concerning this incident were admissible under N.J.R.E. 404(b) or N.J.R.E. 406, the judge failed to provide the jury with any instructions on the appropriate use of this evidence. See Rose, supra, 206 N.J. at 161 ("[L]imiting instructions must be provided to inform the jury of the purposes for which it may, and for which it may not, consider the [Rule 404(b)] evidence . . . both when the evidence is first presented and again as part of the final jury charge"); State v. Radziwil, 235 N.J. Super. 557, 567-68 (App. Div. 1989), aff'd o.b., 121 N.J. 527 (1990) (It is "appropriate — if not

incumbent - upon the trial judge to instruct the jury regarding the use" of habit testimony).

Under these circumstances, we conclude that the judge mistakenly exercised his discretion in allowing plaintiff to submit evidence of the November 2007 incident. We thus reverse the judgment and remand for a new trial.

## IV.

Finally, defendant contends the admission of the FRO was plain error. We find merit in defendant's contention, but discuss it only briefly because defendant will receive a new trial.[7]

Defendant did not object to the admission of the FRO in evidence. However, our Supreme Court has consistently held that FROs should generally not be introduced as exhibits at trial because of their inherent prejudicial effect. See State v. Vallejo, 198 N.J. 122, 133 (2009) ("domestic-violence-restraining-order testimony . . . not only fostered the suggestion that [the] defendant was guilty of that which was charged, but told the jury that a judicial officer believed the victim, thus bolstering her credibility."); State v. Chenique-

---

[7] Because there will be a new trial, there is likewise no need to address defendant's contention that the judge erred in determining the amount of pre-judgment interest due to plaintiff.

Puey, 145 N.J. 334, 343 (1996) (observing that "a jury could interpret the order as a judicial imprimatur on the victim's testimony.  The order creates the inference that if a court found defendant guilty of domestic violence in a prior proceeding, that defendant is more likely guilty of the present [domestic violence] charges.").  Thus, neither the TRO or FRO should be admitted in evidence at the new trial.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2422-12T1