**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0188-17T1

R.W.,

    Plaintiff-Respondent,

v.

R.V.L.,

    Defendant-Appellant.

_____

Submitted June 5, 2018 — Decided July 9, 2018

Before Judges Hoffman and Gilson.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Essex County,
Docket No. FV-07-0501-17.

R.V.L., appellant pro se.

Law Offices of Peter W. Till, attorneys for
respondent (Peter W. Till, on the brief).

PER CURIAM

    Defendant R.V.L. appeals from a November 29, 2016 final
restraining order (FRO), entered under the Prevention of Domestic
Violence Act (PDVA or Act), N.J.S.A. 2C:29-17 to -35, based on a
predicate act of harassment, N.J.S.A. 2C:33-4.  We affirm.

Defendant and R.W. were married in November 2011, and have one child, a daughter born in September 2012.[1] In 2014, R.W. filed for divorce and a final judgment of divorce was entered on March 3, 2015. Both before and after their divorce, disputes arose between the parties concerning parenting issues.

The incident that gave rise to the FRO occurred on August 11, 2016. R.W. claimed that she and defendant had a misunderstanding about who had parenting time that day. When she realized it was defendant's day, she put the daughter into her car seat in defendant's vehicle. According to R.W., after she put the daughter into her car seat, defendant trapped her between the car and the car door and aggressively lunged at her, getting so close to her face that "she could smell his breath." R.W. acknowledged that she pushed defendant away in self-defense. She also acknowledged that defendant sustained scratches to his face, but she could not recall if she caused the scratches or if defendant had inadvertently scratched himself during the incident.

Defendant contested R.W.'s version of events. He agreed that the parties had a misunderstanding about parenting time that day. He claimed, however, that R.W. became frustrated after having

---

[1] We use initials to protect the parties' privacy interests. R. 1:38-3(d)(9).

trouble getting the daughter into her car seat, and as she turned around, she struck him in the face causing his nose and lip to bleed. Defendant immediately called the police. When an officer observed scratches on defendant's face, R.W. was placed under arrest.

Defendant obtained a temporary restraining order (TRO) against R.W. based on predicate acts of harassment and assault, and a prior history of domestic violence. The next day, R.W. obtained a TRO against defendant based on a predicate act of harassment and a prior history of domestic violence, including assault. Specifically, R.W.'s TRO alleged that defendant had "physically assaulted her in West Orange." Thereafter, the parties both sought FROs against each other and a consolidated FRO hearing was scheduled.

Prior to the FRO hearing, R.W. amended her complaint to specify prior instances of domestic violence defendant committed against her. Those prior instances included a September 2014 incident where defendant lunged at her in the daughter's pediatrician's office, and a February 2015 incident where defendant entered the lobby of her apartment building despite being prohibited from entering her building.

The court held a four-day consolidated FRO hearing between September and November 2016. Defendant, who represented himself,

testified and did not present any other witnesses.[2] R.W., who was represented by counsel, also testified and called four other witnesses: (1) a neighbor who witnessed the August 11, 2016 incident; (2) a friend who witnessed the September 2014 incident at the pediatrician's office; (3) a security guard from R.W.'s apartment building; and (4) the police officer who arrested R.W. on August 11, 2016.

After considering the evidence, the trial court found R.W.'s testimony credible and defendant's testimony incredible. The court then found that R.W. had established that defendant committed the predicate act of harassment when he lunged at R.W. on August 11, 2016. The court also found that defendant had committed prior acts of domestic violence against R.W. by (1) grabbing her "engorged breast" in January 2013; (2) pinning her against a wall in May 2014; (3) grabbing a baby monitor out of her hands and breaking it in July 2014; and (4) lunging at her at a pediatrician's office in September 2014. The May and July 2014 incidents were raised by defendant in his complaint against R.W. The court, however, rejected defendant's allegations, accepted

---

[2] Defendant is a licensed attorney in the State of New Jersey.

A-0188-17T1

R.W.'s version of events, and found that defendant committed acts of domestic violence on those dates.[3]

Based on those findings, the trial court concluded that an FRO was necessary to protect R.W. from further abuse, and on November 29, 2016, entered an FRO against defendant. The court also found that defendant failed to prove R.W. had committed any predicate act of domestic violence, and denied his application for an FRO. Defendant appeals only from the November 29, 2016 FRO entered against him.

## II.

On appeal, defendant makes nine arguments, which relate to four alleged errors by the trial court: (1) it failed to recognize certain due process violations; (2) it misapplied the law on harassment; (3) it made unsupported factual findings; and (4) it made erroneous evidentiary rulings. We are not persuaded by any of defendant's arguments. We first address the law governing entry of the FRO. We then briefly address each of defendant's arguments.

---

[3] The trial court referenced a "February 2016" incident in making its findings, but specified that it was referring to the incident "within the doctor's office." The record reflects that incident occurred in September 2014.

A. Entry of the FRO

Our scope of review is limited when considering an FRO issued by the Family Part following a bench trial. A trial court's findings are binding on appeal "when supported by adequate, substantial, and credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). This deference is particularly appropriate where the evidence at trial is largely testimonial and hinges upon a court's credibility findings. Ibid.

Domestic violence occurs when a party commits one or more of the enumerated offenses in the PDVA upon a person covered by the Act. See N.J.S.A. 2C:25-19(a). In determining whether to grant an FRO, a trial judge must engage in a two-step analysis. Silver v. Silver, 387 N.J. Super. 112, 125-26 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125; see also N.J.S.A. 2C:25-29(a) (providing that an FRO may be granted only "after a finding or an admission is made that an act of domestic violence was committed").

Second, the court must determine that an FRO is necessary to provide protection for the victim. Silver, 387 N.J. Super. at 126-27; see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011) (quoting

6

N.J.S.A. 2C:25-29(b) in explaining that an FRO should not issue without a finding that "relief [is] necessary to prevent further abuse"). As part of that second step, the judge must assess "whether a restraining order is necessary, upon an evaluation of the fact[or]s set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127).

Applying these standards, we discern no basis to disturb the trial court's decision to enter an FRO against defendant. There was substantial credible evidence in the record to support the trial court's findings that defendant committed the predicate act of harassment on August 11, 2016. There was also substantial credible evidence regarding the history of domestic violence by defendant against R.W. Based on those findings, the trial court correctly found that an FRO was necessary to protect R.W. from further abuse.

B. Due Process Violations

Defendant contends that his due process rights were violated when the trial court considered certain emails he sent to R.W. on the same day he filed a TRO against her. He also argues that the trial court improperly considered a prior instance of domestic violence from January 2013. Specifically, defendant asserts that

he did not have notice of those matters because they were not expressly listed in R.W.'s initial TRO or in her amended complaint.

Trial courts are not required to limit plaintiffs "to the precise prior history revealed in a complaint, because the testimony might reveal that there are additional prior events that are significant to the court's evaluation, particularly if the events are ambiguous." J.D., 207 N.J. at 479. Indeed, courts often attempt to develop a fuller picture of prior instances of domestic violence than those that are provided by the plaintiff in his or her complaint. Ibid. In those situations, however, trial courts should ensure that a defendant is afforded an adequate opportunity to be apprised of those allegations and to prepare a defense. Id. at 480.

Initially, we note that defendant did not preserve his argument concerning the emails for appeal because he failed to object to their admission at the FRO hearing. Moreover, the trial court did not rely on the emails in finding that defendant committed the predicate act of harassment. Instead, it relied on the emails in finding defendant's testimony incredible, and in denying defendant's application for an FRO against R.W.

We also reject defendant's second due process argument. R.W.'s amended complaint did not expressly identify January 2013 as a prior instance of domestic violence. R.W.'s initial TRO,

however, expressly alleged that defendant had physically assaulted her. Accordingly, it is not clear from this record that defendant did not have notice of the January 2013 incident. Moreover, defendant did not request an adjournment or in any way suggest that he needed more time to investigate, prepare a defense, or present witnesses regarding the January 2013 incident. Although he objected to R.W.'s testimony regarding that incident, he ultimately chose to proceed and cross-examine R.W.

Finally, even without the January 2013 incident, there was substantial credible evidence in the record regarding prior instances of domestic violence by defendant against R.W. This was not a case where "much of the testimony" about prior domestic violence involved instances beyond the four corners of the complaint. L.D. v. W.D., 327 N.J. Super. 1, 4 (App. Div. 1999). To the contrary, the record reflects three other prior instances of domestic violence, independent of the January 2013 incident.

Specifically, the trial court found that defendant had (1) pinned R.W. against a wall in May 2014; (2) grabbed a baby monitor out of R.W.'s hands and broke it in July 2014; and (3) intimidated and lunged at R.W. at a pediatrician's office in September 2014. Defendant was aware of each of the other prior instances because R.W. identified the September 2014 event in her amended complaint and defendant raised the May 2014 and July 2014 events in his

complaint against R.W. Those prior instances of domestic violence were supported by substantial credible evidence and, accordingly, we find no due process violation.

C. Legal Conclusions

Defendant next contends that the trial court erred in concluding that he intended to harass R.W. on two occasions. A person commits harassment if, with purpose to harass another, he:

> a. [m]akes, or causes to be made, a communication . . . at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; b. [s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or c. [e]ngages in any other course of alarming conduct or of repeatedly committed acts with the purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

A finding of "purpose" under the harassment statute may be inferred from the evidence presented. State v. Hoffman, 149 N.J. 564, 577 (1997). Here, substantial credible evidence in the record supported the court's findings that defendant intended to harass R.W. by intimidating and lunging at her during the incident on August 11, 2016, and at a pediatrician's office in September 2014.

D. Factual Findings

Defendant also contends that the trial court erred in making two factual findings. First, defendant argues that the emails he

sent to R.W. on the day he filed a TRO against her did not constitute harassment. As noted, the trial court did not rely on those emails in finding that defendant committed the predicate act of harassment and, thus, we reject that argument. Second, defendant challenges the trial court's finding that he violated prior orders requiring curbside exchanges of the daughter. There was substantial credible evidence in the record regarding the prior court orders, consent agreements, and other communications between defendant and R.W., all of which required defendant to exchange the daughter either at the curbside, or in the vestibule of R.W.'s building. Thus, we discern no basis to disturb that finding.

E. Evidentiary Rulings

Finally, defendant contends that the trial court erred by excluding two documents from evidence: (1) a letter from the pediatrician's office; and (2) a letter from the Division of Child Protection and Permanency. Defendant did not lay a proper foundation for either of those documents to be admitted into evidence. The trial court provided well-reasoned explanations for its decisions to exclude those documents, and we find no abuse of discretion in either of those evidentiary rulings. See L.T. v. F.M., 438 N.J. Super. 76, 89 (App. Div. 2014).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-0188-17T1