**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0324-16T3
                A-2568-16T3

JOSEPH TODARO,

     Plaintiff-Appellant,

v.

LANGSTONE, LLC and
JOSEPH MANZO, ESQ.,

     Defendants,

and

SALVATORE GIORDANO, III,

     Defendant-Respondent.
_____

INTEGRATED DESIGN SYSTEMS
OF NEW JERSEY, LLC,

     Plaintiff,

v.

LANGSTONE, LLC,

     Defendant-Respondent,

and

JOSEPH TODARO,

        Defendant/Third-Party
        Plaintiff-Appellant,

v.

SALVATORE GIORDANO, III,

        Third-Party Defendant.
_____

> Argued September 25, 2018 – Decided December 24, 2018
>
> Before Judges Yannotti and Rothstadt.
>
> On appeal from Superior Court of New Jersey, Law Division, Somerset County, Docket Nos. L-0896-16 and L-1030-08.
>
> Randall J. Peach argued the cause for appellant Joseph Todaro in A-0324-16 and A-2568-16.
>
> Respondent Salvatore Giordano, III has not filed a brief in A-0324-16.
>
> Joseph A. Manzo argued the cause for respondent Langstone, LLC, in A-2568-16.

PER CURIAM

In these two appeals that we considered back-to-back and consolidated for purposes of writing one opinion, the principal parties, Joseph Todaro and

Salvatore Giordano, III and his company, Langstone Inc., have been pursuing each other through litigation for more than a decade.[1] The present appeals arose from their commercial tenancy dispute that was tried by a judge in 2012 and resulted in a substantial judgment against Todaro. We affirmed that judgment in a 2016 unpublished opinion. See Todaro v. Langstone, LLC, No. A-5892-11 (App. Div. March 2, 2016) (slip op. at 2).

After we issued our opinion, Todaro filed a motion and a separate complaint in a new action seeking primarily to vacate the judgment against him and argued that it was obtained through Giordano's perjury and commission of a fraud upon the court during the 2012 trial. In A-0324-16, Todaro now appeals from the trial court's dismissal of his new complaint and in A-2568-16, from the denial of his Rule 4:50-3 motion to vacate. For the reasons that follow, we affirm both orders under appeal.

We begin with a summary of the facts already reviewed in our earlier opinion, Todaro, slip op. at 3-13, adding the procedural history of the actions filed since we issued our opinion to give context to the present dispute. In 2005, Langstone and Todaro entered into a fifteen-year lease for commercial property

---

[1] One trial court judge observed that by 2012, there had been seven complaints filed between the same parties.

owned by Todaro, which required Langstone to obtain municipal approvals for the construction of an automotive oil change facility it was going to operate from the leased premises. Langstone hired Integrated Design Systems of New Jersey, LLC ("Integrated") as its general contractor, but a dispute arose that resulted in Integrated leaving the job and Todaro and Langstone disagreeing over who was responsible for the construction not being completed.

The present dispute arose from two actions originally filed by Integrated against Langstone and Todaro in 2008 for its unpaid bills and to establish a construction lien. The two actions were consolidated and Langstone asserted claims against Todaro, who in turn in turn joined Giordano. After Langstone and Integrated settled, the remaining claims between Langstone, Giordano, and Todaro proceeded to trial.

Giordano's and Langstone's claim against Todaro was premised upon Todaro's interfering with the approvals Langstone obtained from` the local planning board. According to Giordano, the project was unable to proceed because of an April 9, 2008 letter sent to the planning board by Todaro's attorney which objected to Langstone's proposed demolition plans and resulted in the board reevaluating and ultimately withdrawing its approval. When the board withdrew its approval, Integrated ceased working on the project.

A-0324-16T3

During his cross-examination of Giordano, Todaro's attorney confronted him with a letter Giordano sent on April 21, 2008 to the borough attorney, stating that he had fired Integrated. Giordano testified that, despite the letter, he did not terminate the relationship with Integrated and that the letter was simply "posturing."

During the later testimony of Todaro's last witness, his engineering expert, the witness produced a March 28, 2008 email sent at 12:51 p.m. by Giordano to Integrated stating that the contract with Integrated was "terminated" because it had not provided certain required information. Giordano sent a second email after Integrated responded, stating that if it did not resolve a specific issue by the following Tuesday, he would "hire [his] own excavator . . . and finish the project [him]self." Todaro contended that Giordano's firing of Integrated, as confirmed in the first email rather than his attorney's April 9, 2008 letter to the board, was the cause of the project's failure and established Giordano's lying to the court.

In his comprehensive, sixty-nine-page written decision, the trial judge found Giordano to be credible and Todaro to be unbelievable. As to the letters and emails relating to Integrated's termination, the judge accepted Giordano's explanation that he was "posturing." As we observed in our earlier opinion, after

considering all of the evidence at trial, the "judge found that Todaro was in material breach of the lease . . . ." Todaro, slip op. at 12. The judge ultimately found for Langstone and Giordano, entered judgment in Langstone's favor for $305,557.64, and dismissed Todaro's claims against Langstone and Giordano.

In response to Langstone's efforts to collect its judgment, in December 2013, Todaro filed a motion to set aside the judgment under Rule 4:50-3 and for the imposition of sanctions against Langstone based on Giordano's committing a fraud on the court and perjuring himself at trial. (Da 114-116). At the time he filed his motion, Todaro had already filed a notice of appeal from the trial judge's decision on August 13, 2012. In support of the motion, Todaro filed his attorney's twenty-page certification in which he argued it was apparent that the judgment entered against Todaro was based upon Giordano's perjury and fraud and should be vacated.

Attached to counsel's certification were various documents that pre-dated the trial and which counsel asserted established the fact that Giordano committed perjury. The documents included a construction lien filed by Langstone; the April 21, 2008 letter from Giordano to the borough attorney; a copy of a construction lien claim filed by Integrated in April 2008; an April 18, 2008 letter Langstone wrote to the Office of Regulatory Affairs; and a June 11,

2008 letter from Giordano to Valley National Bank. According to counsel, all of these items established that Giordano fired Integrated as of March 28, 2008.

On January 31, 2014, the motion judge denied Todaro's motions without prejudice. As set forth in his written decision, the judge found that the motion to set aside the judgment was untimely and that a decision on the motion "would be usurping the Appellate Division . . . ." Todaro filed a second appeal challenging the denial of his motion, which we considered with the then-pending earlier appeal from the trial judge's decision.

In his earlier appeals, Todaro raised numerous issues regarding the trial judge's decision and the denial of his December 2013 post-judgment motion to vacate. Among his contentions, he stated that the judgment against him was entered in error and should have been vacated based upon Giordano's committing perjury relative to the dispute about why Integrated stopped performing at the site. We issued our opinion on March 2, 2016, in which we rejected Todaro's arguments as being without merit and affirmed based upon the findings made by the trial judge. We concluded that the trial judge's determination about Todaro's interference with the project was supported by substantial credible evidence. We then addressed certain specific contentions made by Todaro and we stated that to the extent we did not specifically address

7

Todaro's remaining arguments, they lacked sufficient merit to warrant discussion, citing to Rule 2:11-3(e)(1)(E). We later denied Todaro's motion for reconsideration. In September 2016, the Supreme Court denied Todaro's petition for certification. Todaro v. Langstone, LLC, 227 N.J. 357 (2016).

In April 2016, Todaro filed a new complaint seeking damages and alleging that Langstone, Giordano, and their attorney, Joseph Manzo, committed perjury and fraud during the bench trial. Manzo filed a Rule 4:6-2(e) motion to dismiss for failure to state a claim in lieu of an answer. During the hearing on the motion, Manzo argued that the courts already determined there were no issues relating to perjury. Todaro maintained that no court addressed these claims and that the trial judge was misled. In opposition to the motion, Todaro filed a certification from his trial attorney who certified that the judgment was entered as a result of Giordano's perjury "when he testified, repeatedly, that he never fired [Integrated] . . . ." He also explained that Giordano was not cross-examined with the March 28, 2008 emails, that the emails were disclosed only "[at] the end of the trial," and that he only cross-examined Giordano about the April 21, 2008 letter he sent to the borough attorney.

On August 9, 2016, Judge Yolanda Ciccone granted Manzo's motion and entered an order dismissing Todaro's new complaint with prejudice as to all

A-0324-16T3

defendants.  She found that the claims against Manzo were barred by both the litigation privilege and collateral estoppel.  She specifically concluded that a "finding that [Todaro's] claims are barred by the doctrine of collateral estoppel as to . . . Langstone or Manzo effectively bars [Todaro's] claims against Giordano."  The judge then analyzed each of Todaro's claims and found that the same contentions were raised and ruled upon by the trial judge, our court, and the motion judge in Todaro's December 2013 motion to vacate.  Relying on her findings that collateral estoppel applied, Judge Ciccone dismissed Todaro's complaint as to all defendants with prejudice.  Todaro appealed from the order on September 22, 2016.

In November 2016, Todaro filed a motion to set aside the 2012 judgment under Rule 4:50-3 and again argued that Langstone through Giordano committed perjury and fraud on the court.  In support of his motion, Todaro filed the certification of his attorney that had attached various documents, many if not all of which were included in the certification filed in support of the December 2013 motion to vacate.  The documents that counsel designated as "Materials documenting the perjury committed by Langstone" included a copy of an undated complaint filed by Giordano in 2016 against Todaro, his attorneys and

others.[2]    They also included copies of Todaro's motion and attorney's certification filed in his 2013 post-judgment motion to vacate; the earlier March 28, 2008 email from Giordano to Integrated; a construction lien claim in favor of Langstone as to Todaro's premises; the April 9, 2008 letter from Todaro's attorney to the planning board's attorney; portions of transcripts from earlier proceedings between the parties in 2011; the April 21, 2008 letter from Giordano to the borough attorney; a copy of a 2008 complaint filed by Integrated against Langstone; a 2013 letter from Manzo to the trial judge; a 2008 letter from Giordano to the Office of Regulatory Affairs; a 2008 letter from Langstone to Valley National Bank; and a copy of a certification dated September 21, 2010, and filed by Integrated in its initial action against Langstone.    In that certification, Integrated's managing member stated that "on or about March 28, 2008," Langstone prevented Integrated "from working on the project."

On January 20, 2017, Judge Ciccone entered an order denying Todaro's motion.  In her oral decision, the judge found again that the doctrine of collateral estoppel barred Todaro's claims from being re-litigated.  Todaro filed his appeal from that order on February 22, 2017.

---

[2]  Judge Ciccone dismissed Giordano's complaint in April 2017.  That order is not a subject of these appeals.

A-0324-16T3

In his present appeal from the denial of his motion to vacate, Todaro argues that it would be a "miscarriage of justice" if we do not intervene and vacate "the judgment [that was] based on [Giordano's] indisputable perjury and fraud on the [] court . . . ." He contends that collateral estoppel should not have barred the pursuit of his motion to vacate and he suggests that we employ a de novo standard of review in our consideration of Judge Ciccone's order because she failed to conduct the proper analysis.

Todaro's contentions on appeal from Judge Ciccone's order dismissing his complaint under Rule 4:6-2(e) are similar. In that appeal, he argues collateral estoppel should not have barred his pleading. Additionally, he contends that it was an error to dismiss the complaint as to Giordano, who was not a party to Manzo's motion; that Manzo failed to establish he was entitled to dismissal under the applicable standard; the dismissal motion should have been denied because it was based upon "false representations;" and the judge improperly determined that "the litigation privilege" barred any claim against Manzo for assertions made during the trial.

The common argument in Todaro's present appeals, and the lynchpin to all of the other issues he raises, is that Judge Ciccone erred in her application of the doctrine of collateral estoppel. We disagree.

11

The doctrine of collateral estoppel "'bars re[-]litigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" In re Liquidation of Integrity Ins. Co., 214 N.J. 51, 66 (2013) (quoting Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 114 (2011)).

> For collateral estoppel to apply:
>
> the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [In re Estate of Dawson, 136 N.J. 1, 20 (1994).]

See also Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012). However, "[e]ven where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so." Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521-22 (2006) (alteration in original) (quoting Pace v. Kuchinsky, 347 N.J. Super. 202, 215 (App. Div. 2002)).

Our Supreme Court has identified "a variety of fairness factors" favoring application of collateral estoppel, including: "conservation of judicial resources;

avoidance of repetitious litigation; and prevention of waste, harassment, uncertainty and inconsistency."  Allen v. V & A Bros., Inc., 208 N.J. 114, 138 (2011) (quoting Olivieri, 186 N.J. at 523).  In contrast, the fairness factors weighing against application of collateral estoppel include consideration of whether:

> the party against whom preclusion is sought could not have obtained review of the prior judgment; the quality or extent of the procedures in the two actions is different; it was not foreseeable at the time of the prior action that the issue would arise in subsequent litigation; and the precluded party did not have an adequate opportunity to obtain a full and fair adjudication in the prior action.
>
> [Ibid. (quoting Olivieri, 186 N.J. at 523).]

Also weighing against preclusion is "a concern that 'treating the issue as conclusively determined may complicate determination of issues in the subsequent action' . . . .'"  Ibid. (quoting Restatement (Second) of Judgments § 29 (Am. Law Inst. 1982)).  Indeed, collateral estoppel will not be applied "where, after the rendition of the judgment, events or conditions arise which create a new legal situation or alter the rights of the parties."  Kozlowski v. Smith, 193 N.J. Super. 672, 675 (App. Div. 1984) (quoting Wash. Twp. v. Gould, 39 N.J. 527, 533 (1963)).  Another example is when "new evidence has

become available that could likely lead to a different result." Barker v. Brinegar, 346 N.J. Super. 558, 567 (App. Div. 2002).

Thus, "[t]he relevant focus 'must center on whether the conditions precedent to the application of the collateral estoppel doctrine have been satisfied and, if so, whether the application of the doctrine is equitable under the circumstances.'" L.T. v. F.M., 438 N.J. Super. 76, 86 (App. Div. 2014) (quoting R.D., 207 N.J. at 116).

Under the first prong, the prior action must have involved substantially similar or identical issues. Ibid. (quoting Olivieri, 186 N.J. at 521). Some courts have required the issues to be "precisely the same . . . ." In re Liquidation, 214 N.J. at 68 (quoting In re McWhorter, 887 F.2d 1564, 1567 (11th Cir. 1989). This prong therefore requires consideration of

> whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related.
>
> [First Union Nat'l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 353 (2007).]

Under the second Dawson prong, an "issue is actually litigated" if the issue "'is properly raised, by the pleadings or otherwise, and is submitted for

14

determination, and is determined . . . .'" Allesandra v. Gross, 187 N.J. Super. 96, 105-06 (App. Div. 1982) (quoting Restatement (Second) of Judgments § 27, cmt. d (Am. Law Inst. 1982)). By contrast, an issue is not "actually litigated" when, although it is raised, "no decision with respect thereto was ever rendered" by the prior tribunal. Id. at 106-07.

With these guiding principles in mind, we turn to our review of the orders denying Todaro's Rule 4:50-3 motion and dismissing his complaint under Rule 4:6-2(e). We review a court's determination of a Rule 4:50 motion under an abuse of discretion standard. DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261 (2009). We will find "an abuse of discretion when a decision is made 'without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

We "review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court." Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014). As such, we are required to limit our inquiry "to examining the legal sufficiency of facts alleged on the face of the complaint." Green v. Morgan Props., 215 N.J. 431, 451 (2013) (quoting Printing Mart-

15

Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). Legal sufficiency "requires allegation of all the facts that the cause of action requires." Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 385 (App. Div. 2010). The test is whether a cause of action is "suggested" by the facts. Printing Mart, 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192) (1988)). We "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary[,]" ibid. (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1957)), unless an "opportunity to amend would not be fruitful." Johnson v. Glassman, 401 N.J. Super. 222, 247 (App. Div. 2008). See also Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009).

Applying both standards, we conclude from our review that Judge Ciccone neither abused her discretion in denying Todaro's motion to vacate nor erred in granting Manzo's Rule 4:6-2(e) motion as to all defendants. In each instance, we agree with the judge's determination that Todaro's claims of perjury were litigated through the trial and in our consideration of Todaro's earlier appeals.

Even if collateral estoppel did not apply, we conclude that Todaro's claims were not supported by any "clear, convincing and satisfactory evidence" of

16

perjury that was not available to him during the trial and that established the alleged "[p]erjured testimony . . . warrant[ed] disturbance of [the] final judgment . . . [because it was] willfully and purposely falsely given, and . . . [was] material to the issue tried and not merely cumulative but probably to have controlled the result." Shammas v. Shammas, 9 N.J. 321, 330 (1952). Similarly, Todaro's post-judgment submissions in support of his claim that a fraud upon the court was committed by Giordano or Manzo failed to "'demonstrate[], clearly and convincingly, that a party ha[d] sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability [to] impartially . . . adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.'" Triffin v. Automatic Data Processing, Inc., 411 N.J. Super. 292, 298 (App. Div. 2010) (quoting Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 251 (App. Div. 2007)). While as Todaro argues a fraud on the court may occur where a party commits perjury, whether through oral or written testimony, see Von Pein v. Von Pein, 268 N.J. Super. 7, 15-16 (App. Div. 1993), perjured testimony alone is generally not sufficient to set aside a judgment. Shammas, 9 N.J. at 329-30. In any event, here, the trial judge was fully aware of Giordano's inconsistent letters, emails, and testimony, including the March 28, 2008 emails,

when he decided the case and gave it the weight he deemed appropriate. There has been no new evidence presented that warrants any further consideration.

We have also considered Todaro's remaining arguments and conclude that they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION